CRAIG (HINES v.).    See Case No. 6,518.

———

## Case No. 3,334.

### CRAIG et al. v. MAXWELL.

[2 Blatchf. 545.][1]

Circuit Court, S. D. New York. Feb. Term, 1853.

CUSTOMS DUTIES—PROTEST—CONSUL'S CERTIFI-
CATE.

1. Where a protest against the payment of duties claimed a discount on the value in paper currency stated in the invoice, "as per consul's certificate," and the invoice stated the fair market value of the goods, at its date, at the foreign port, in paper currency, and also the correct rate of discount for specie value: *Held*, that the statement in the protest amounted to an averment that a proper consul's certificate was presented to the collector with the invoice, or, at least, that the importer had one, or was able and offered to produce it.

[Cited in Alsop v. Maxwell, Case No. 264.]

2. It is not necessary that such a certificate should be absolutely presented with the invoice when the entry is made; but, if it is not so presented, a bond must be given to produce it.

3. When such a certificate is offered and rejected, or when an offer is made to produce one, and the collector does not exact such bond, it will be presumed that the collector refused to be governed by the certificate if exhibited.

4. Under such circumstances, the importer stands on the same footing as if such a certificate had accompanied his invoice.

This was an action [by William Craig and Charles M. Dutilh against Hugh Maxwell] to recover back an alleged excess of duties paid to the defendant, as collector of the port of New York. A verdict was taken for the plaintiffs, subject to the opinion of the court.

John S. McCulloh, for plaintiffs.

J. Prescott Hall, Dist. Atty., for defendant.

BETTS, District Judge. In September, 1849, the plaintiffs made entry, at the custom-house at New York, of three parcels of goods imported from Trieste. The invoices were all dated at Trieste, July 10th, 1849, and the prices of the goods were stated therein in paper florins, with a discount of 18½ per cent.,

———

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

to bring them to specie value. The same abatement was claimed by the plaintiffs on the entry, but it was refused them at the custom-house, and the collector, on the 24th of September, 1849, exacted and received payment of duties upon the paper valuation of the invoices. The plaintiffs, at the time of payment, made on the entry the following protest, in writing: "We do hereby protest against the payment of duty on 2,939.52 florins, as per entry, claiming a discount of 18½ per cent. on the paper currency, as per consul's certificate. We pay the amount exacted, to gain possession of the goods, claiming to have the difference refunded."

No consular certificates are proved to have accompanied the invoices, nor is it shown that the collector demanded a bond of the plaintiffs for their after production. It was proved on the trial that the invoices stated the fair market prices and value of the goods at Trieste at their date, in paper florins, reduced to their specie value, and that the depreciation of the paper currency was then at the rate claimed upon the invoices and entry. It was also proved to be a frequent usage at the custom-house at New York, when an invoice was presented of Austrian goods, charged in paper currency, accompanied by a consular certificate certifying the depreciation of that currency, for the collector to separate the certificate from the invoice, as not admissible nor entitled to any consideration, because the value of the Austrian florin was fixed by law.

I think that the statement in the protest must be understood to be an averment that a proper consular certificate was presented to the collector with the invoices in this case, and that the receipt of the money of the defendants by the collector on such protest, is an implied admission by him that he was cognizant of the certificate. The language of the protest, if not deemed a direct assertion that a consular certificate accompanied the invoices, at least imports that the plaintiffs had one in their possession, or were able and offered to produce it. The instructions from the treasury department do not require a consular certificate to be absolutely presented with the invoice when an entry is made. The instructions of May 14th, 1831, require a certificate by a United States consul of the value of the foreign currency, but do not fix the time of its production. The circular of October 16th, 1832, makes it necessary, in all cases when the invoice is not accompanied by the certificate, to give bond to produce it within eight months, if the goods were imported from any place on this side of the Cape of Good Hope. The injunction to furnish consular certificates in cases wherein they are necessary, is renewed with greater emphasis in the circular of April 4th, 1840. It says, that each invoice in depreciated currency is required to be accompanied by a consular certificate stating the true value of such currency in silver, &c., and that, in default thereof,

bond is to be given for its production, according to the instructions of October, 1832. This is in substance repeated in the circular of October 12th, 1849.

When the importer offers a consular certificate, and it is rejected as imperfect and not fulfilling the requirements of the president, or asserts that he will produce one, it is the duty of the collector to take a bond from him to produce one conformable to the demand of the law; and, if such bond is not exacted, it must be presumed that the collector refused to be governed by the consular certificate if exhibited. In such case, the importer ought to be exempted from the expense and delay of obtaining one, it being officially made known to him that the collector will not regard it when produced.

I consider the evidence in this case as amounting to satisfactory proof that the collector refused to make the deduction claimed upon a certificate of the consul showing it to be the true rate of depreciation, and that the plaintiffs stand on the same footing as if a consular certificate to the fact had accompanied their invoices. They are, therefore, entitled to judgment for the difference of duty paid between the silver value of the importations and the prices in paper. The amount is to be adjusted at the custom-house, if not agreed between the parties.