## COUSINERY v. SCHELL.

*(Circuit Court, S. D. New York. December 21, 1887.)*

CUSTOMS DUTIES—ACTIONS TO RECOVER PAYMENT—VALUATIONS IN DEPRE-
CIATED CURRENCY—FAILURE TO SHOW PRODUCTION OF CONSULAR CERTIFI-
CATE.

In an action to recover an excess of duty paid on an importation valued in
depreciated foreign currency, where it appears that a bond was given by the
importer under authority of the treasury regulations of February 1, 1857, § 226,
for the production of the consular certificate of its valuation in Spanish or
United States silver dollars, the plaintiff cannot recover if he fails to show
that such certificate was produced within the time prescribed in said bond.

At Law. Action to recover back customs duties.

The plaintiff's firm of F. Cousinery & Co., on March 27, 1860, by the
ship Pace, and on April 17, 1860, by the ship Union, imported into the
port of New York from Trieste, Austria, certain merchandise. This
merchandise was subject to an *ad valorem* duty, and was invoiced in de-
preciated Austrian paper florins, which were issued and circulated un-
der the authority of the Austrian government, and whose value was not
fixed by any law of the United States. Augustus Schell, the defendant's
testator, as collector of customs, converted these florins into United States
money at the rate of 48½ cents per florin, and exacted duty on the mer-
chandise in question upon the basis of such valuation of the florin on
the respective days of its importation. Against this valuation the plain-
tiff's firm made protests under the act of February 26, 1845, (5 U. S.
St. at Large, 727,) claiming that the true value in United States money
of such florin was less than 48½ cents, and as certified in the certificate
of the United States consul at Trieste, attached to their invoices of this
merchandise, and that they were entitled to recover the duty exacted on
the difference between the value of the florin as taken at 48½ cents and
its value as certified by the consul. Thereafter, on April 13, 1861,
plaintiff's firm brought this suit to recover the duty claimed by them
in their protests.

The laws and treasury regulations in force at the time of these impor-
tations were as follows: Section 2 of the act of March 3, 1801, (2 U.
S. St. at Large, 121,) which provided that "the invoices of all goods
imported into the United States, and subject to a duty *ad valorem,* shall
be made out in the currency of the place or country from which the im-
portation shall be made," etc; section 61 of the act of March 2, 1799,
(1 U. S. St. at Large, 673,) which provided, besides other things, "that
it shall be lawful for the president of the United States to cause to be es-
tablished fit and proper regulations for estimating the duties on the
goods, wares, and merchandise, imported into the United States in re-
spect to which original invoice shall be exhibited in a depreciated cur-
rency issued and circulated under the authority of any foreign govern-
ment;" paragraphs 216, 226, 714, 715, and 716 of treasury regulations,
issued February 1, 1857, which provided that:

"Where the value of the foreign currency is not fixed by any law of the United States, the invoice must be accompanied by a consular certificate showing its value in Spanish or United States silver dollars."

"The consul's certificate of the value of the foreign currency in which the invoice is made out, when depreciated, or its value not fixed by the laws of the United States, will be according to form 224 of these regulations, and must be attached to the invoice in a manner that will best secure it from loss or removal."

"When in such case the certificate is not produced, the importer is required to give a bond to produce such consular certificate, whether the import be subject to duty or not. This bond will be in the following form, and, if the merchandise be dutiable, in a penal sum equal to the amount of duties assessable thereon, but, if free of duty, in the penal sum of one hundred dollars:

"(Form No. 75)

"BOND TO PRODUCE CONSULAR CURRENCY CERTIFICATE.

"Know all men by these presents, that we, ———, are held and firmly bound unto the United States of America in the sum of ——— dollars, to be paid to the said United States; for payment whereof we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents: sealed with our seals, dated this ——— day of ———, in the ——— year of the independence of the said United States, and in year of our Lord one thousand eight hundred and ———. Whereas, the above-bounden ——— entered certain goods, wares, and merchandise, imported by ———, in the ship ———, whereof ——— is master, from ———, the amount of duties charged whereon is the sum of ———; and whereas, the invoice of the said goods, wares, and merchandise, presented on the entry thereof, was made out in a foreign currency, the value whereof is not fixed by the laws of the United States, and which invoice was not accompanied by a certificate from the consul of the United States at ——— aforesaid, being the place of exportation of the said goods, wares, and merchandise, showing the value of the currency wherein the invoice was made out in United States or Spanish silver dollars: Now, therefore, the condition of this obligation is such that if the above-bounden ——— shall well and truly pay or cause to be paid unto the collector of customs for the district of ———, for the time being, the sum of ———, or shall produce such certificate as aforesaid within ——— months from the date of these presents, then the above obligation to be void; otherwise to remain in full force and virtue.

"——— ———  [Seal.]
"——— ———  [Seal.]"

"Sealed and delivered in presence of ———,

"Invoices of *ad valorem* or free goods, when made out in a foreign depreciated currency, or a currency the value of which is not fixed by the laws of the United States, whether the importer or owner resides in this country or abroad, must in each case be accompanied by a consular certificate showing the value of such currency in United States or Spanish silver dollars, according to the annexed form:

"(Form No. 224.)

"OF CONSULAR CERTIFICATE OF THE VALUE OF CURRENCY.

" I, A. B., consul of the United States of America, do hereby certify that the true value of the currency of the kingdom of ———, in which currency the annexed invoice of merchandise is made out, is ——— cents, estimated in United States or Spanish silver dollars.

[Signed]  "A. B.

"The consular officers will either make their certificate upon the invoice itself, or give such details, where it is attached as a separate document, as to the names of the shippers, consignees, vessels, and captains, the nature of the merchandise, and the total amount, as will fully identify the invoice annexed, instead of giving, as heretofore, their certificates in such general terms as to admit of the deception—which the department is informed has been practiced—of substituting another invoice in place of the one for which the certificate was originally issued."

"They are also especially enjoined to observe great caution in granting certificates, where application shall be made for the same, for former shipments which were unaccompanied by said certificates, until they are fully satisfied by the correctness of the invoices presented to them for that purpose, as the very omission of the certificates with the invoices at the time of entry is in many cases presumptive evidence that a fraud was intended, if not practiced, upon the public revenue."

These regulations were held, in *Dutilh* v. *Maxwell*, 2 Blatchf. 541, to be the regulations of the president, under the aforesaid law of 1799.

All of the invoices, except two, of the merchandise imported by the Pace, and all of the invoices except one of the merchandise imported by the Union, had each attached thereto, or subsequently and duly produced, prior to July 20, 1860, consular certificates; and in case of the invoices with consular certificates so attached or produced a refund was made July 28, 1860, to the plaintiff's firm of the duty exacted on the difference between the value of the florin as taken by the collector at 48½ cents in United States money, and its value as certified by the consul. In case of the two invoices by the Pace, and of the one by the Union, which were without consular certificates, plaintiff's firm, according to the usual course of business at the custom-house, were required to give and did give bonds for the production of such certificates, although neither of such bonds nor a copy thereof was produced by the plaintiff, nor any evidence given by him of the time within which such consular certificates were required thereby. As to the two invoices by the Pace, a consular certificate dated September 11, 1860, was presented to the collector, after the giving of a bond for the production of the same; but it did not in any way appear that a consular certificate was ever presented in compliance with the bond given in the case of the one invoice by the Union, or that suit was ever brought on any bond given in the case of either the invoice by the Pace or by the Union. At the close of the plaintiff's case, the defendant's counsel moved for a direction of verdict in favor of the defendants, on the grounds, besides others: *First*, that there was no proof in the case that plaintiff's firm ever gave the bond required by the aforesaid treasury regulations for the production of a consular certificate in case of either of the two invoices by the Pace or of one by the Union; *second*, that if such bond was given in the case of either of such invoices, there was no proof that a consular certificate was ever produced in compliance therewith; *third*, that if such consular certificate was produced in case of either of such invoices, there was no proof that it was produced within the time required by the bond given for its production; and, *fourth*, that the plaintiffs had not proven facts sufficient to entitle them to recover as to either of such invoices.

*A. W. Griswold*, for plaintiff.

*Stephen. A. Walker*, Dist. Atty., and *Thomas Greenwood*, Asst. Dist. Atty., for defendant.

LACOMBE, J., (*orally*.) The importer, under the statutes, had no claim to have the valuation of his goods reduced to the equivalent of a depreciated currency, except in the manner indicated at the close of section 61 of the act of 1799. The way there pointed out was that the president might make regulations for the appraisement and valuation of goods that were invoiced or purchased in a depreciated currency. The only regulations made under the authority of that section which are produced are the treasury regulations of 1857, and the plaintiff must make out a case, in the manner indicated therein, entitling him to a valuation at the reduced amount, before he can recover. The regulations, as read in evidence, comprise a number of sections or articles. All of them, except section 226,— and in fact the first part of section 226, also,—plainly contemplate and require that a consular certificate of depreciation shall be attached to the invoice and must accompany it. The only provision of the regulations to which the plaintiff can point which relieves him from the obligation of producing that certificate attached to the invoice at the time of entry, is that calling for the bond which is provided for in section 226 and form 75. There is, in my opinion, sufficient evidence here to show that whatever bond was called for by the regulations, and was asked for by the indorsement on the entry, "Take currency bond," was given; but there is a failure to prove within what time that bond required the consular certificate to be produced, and in the only case where the consular certificate was produced it was so produced only after a lapse of a period of about five months and a half.

There has, therefore, been, in my opinion, on the part of the plaintiff, a failure to prove his case,—a lack of proof sufficient to bring him within the provisions of the latter part of section 226,—even assuming—and I do not mean now to pass conclusively on that question—even assuming that the giving of the bond and the subsequent production of the certificate within the time required by the bond, would be sufficient to entitle him to a refund, where he had paid the duties before the certificate was produced. I shall therefore direct a verdict for the defendant.