### Tong & Co. *v.* United States (2544) [1]

CURRENCY CONVERSION—CONSULAR CERTIFICATE OF DEPRECIATION.

Goods were imported under the tariff act of 1913. Section 25, tariff act of 1894, instructed the Secretary of the Treasury to proclaim quarterly the value in our money of all foreign coins, and provided that such values should be used for tariff purposes, but permitted him to order liquidation at a different value when shown a variation of as much as 10 per centum from the proclaimed value. R. S. 2903 empowered the President to establish regulations for converting depreciated foreign currencies. T. D. 38187 directed that, in case of depre-

[1] T. D. 40962.

ciated currency, a consular currency certificate showing the depreciation must be attached to the invoice, and announced that, in the absence of such certificate, collectors would make no allowance. Article 621, Customs Regulations, 1915, directs collectors to make no allowance if such certificate is not produced at the time of entry. Such requirement is reasonable, and the judgment of the Board of United States General Appraisers, excluding such certificate obtained after liquidation and overruling the protest against the collector's liquidation without allowance is affirmed.

### United States Court of Customs Appeals, June 3, 1925

APPEAL from Board of United States General Appraisers, Abstract 48755

[Affirmed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General, for the United States.

[Oral argument May 21, 1925, by Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The entry in this case was made under the tariff act of 1913.

It is agreed, and is the fact, that at that time, under the law then in force, section 25 of the tariff act of August 27, 1894, it was the duty of the Secretary of the Treasury to proclaim quarterly in each year the value in United States money of all foreign coins, which values should be taken in estimating the value of foreign merchandise imported into the United States during the quarter for which the value was so proclaimed, with a proviso that the Secretary of the Treasury might order the liquidation of any entry at a different value, whenever satisfactory evidence should be produced to him showing that the value in United States currency of the foreign money of the invoice was, at the date of certification, at least 10 per centum, more or less, than the value proclaimed during the quarter in which the consular certification occurred.

Section 2903 of the Revised Statutes, also in force at the time of the entry in this case, provided that—

the President may cause to be established fit and proper regulations for estimating the duties on merchandise imported into the United States, in respect to which the original cost shall be exhibited in a depreciated currency, issued and circulated under the authority of any foreign government.

From time to time the President had caused to be established regulations as provided in the section. The latest thereof, in force when this entry was made, may be found in T. D. 38187, the relevant parts of which are as follows:

(*a*) When the price or value of merchandise obtained by purchase, shipped pursuant to an agreement of purchase, or consigned for sale in the United States, is expressed in the invoice in a currency which is depreciated as compared to the

corresponding standard coin currency, *a currency certificate (Form 144) must be attached to the invoice* showing the percentage of depreciation as compared with the corresponding standard coin currency and the value in such standard coin currency of the total amount of the depreciated currency stated in the invoice. * * * This certificate should show not the value of the depreciated currency in money of account of the United States but its value in the terms of the standard coin currency in comparison with which the currency stated in the invoice is depreciated. (Italics ours.)

(b) * * * In the assessment of duty the currency of the invoice is reduced to the money of account of the United States upon the basis of the values of foreign coins at the date of shipment, as proclaimed by the Secretary of the Treasury for the 1st day of January, April, July, and October of each year. * * * The date of the consular certification of any invoice shall, for the purposes of this section, be considered the date of exportation. * * * In the absence of a currency certificate no allowance will be made by the collector of customs for depreciated currency.

It is agreed that the "currency certificate," mentioned in the foregoing regulation, is to be made by the American consular representative in the foreign country of export.

This executive regulation is found in the Consular Regulations.

The Treasury Regulations of 1915, article 621, among other things provides that "if the currency certificate is not produced at the time of entry no allowance will be made in the liquidation for depreciated currency."

Importers claimed in their protest that the currency of the invoice "was depreciated 10 per centum more than the proclaimed value thereof during the quarter in which the merchandise was exported and duties should be assessed on the depreciated value as per section 2903 Revised Statutes."

The collector refused to liquidate on the claimed depreciated value of the currency of the invoice, but liquidated on the value thereof proclaimed for the quarter in which the importation was made.

No proof was at any time tendered by importers to support the claim of depreciation other than the belated currency certificate later herein referred to which, so far as the record shows, was first produced at the hearing before the board.

When the entry in this case was made, no currency certificate was attached to the invoice or produced. The Secretary of the Treasury had not ordered a liquidation under the proviso of section 25 of the act of August 27, 1894, nor does it appear that application had been made to him for an order to that effect as provided in said section and in article 621 of the Customs Regulations of 1915.

After the liquidation the importers obtained the currency certificate from the American consul at the port of export, just when does not appear, nor does it appear why it was not forwarded with or attached to the consular invoice by the consul.

At the hearing before the Board of General Appraisers the importers offered in evidence such currency certificate. Subject to importers' exception, it was excluded and the protest overruled.

The questions standing for decision here are whether the board was right in excluding the offered currency certificate and in sustaining the collector's action in liquidating on the basis of the proclaimed value of the foreign coin of the invoice.

We think both questions must be answered in the affirmative.

The pertinent regulations established by the Executive, so far as applicable to this case, which must govern its determination, provide that "A currency certificate must be attached to the invoice showing the percentage of depreciation." And that "in the absence of the currency certificate no allowance will be made by the collector of customs for depreciated currency."

We think these quoted expressions clearly mean that the currency certificate must be attached to the consular invoice at the time of entry, and that under the circumstances of this case the collector was without power to liquidate otherwise than as he did.

In appropriate cases importers may still obtain relief under the proviso of section 25 of the act of 1894.

Importers' argument that the presidential regulation does not in terms provide that the currency certificate must be attached to the invoice at the *exact time* of making the entry is plausible but not persuasive.

If it appeared that the consul had deliberately and willfully neglected or refused to perform his duty a different question would be presented.

The fact that previous applicable regulations may have provided that the currency certificate might be treated as a "separate document" or that a bond might be taken for its later production, in view of the fact that there are now no such regulations, makes against rather than for the importers' contention. Neither does the fact that the Consular Regulations provide in certain cases for substitute or "replaced" invoices affect, because they do not cover, the case here.

Many cases decided before the presidential regulation now in force was promulgated have been cited. They are not of particular importance except as tending to show the necessity of producing with, or having attached to, the consular invoice at the time of entry the currency certificate.

For information we refer to some of such cases: G. A. 3514, T. D. 17252; G. A. 7679, T. D. 35122; G. A. 7997, T. D. 36850; Abstract 43172; G. A. 6066, T. D. 26448; *Cousinery* v. *Schell*, 34 Fed. 272; *Craig* v. *Maxwell*, 6 Fed. Cas. 728.

The collector is required by law to liquidate the entries on the basis of the proclaimed currency rate except as otherwise provided. To enable him to perform this duty, it is not unreasonable to require, when entry is made upon a consular invoice, that the currency certificate must be attached to the invoice.

The question as to what may be necessary in this respect when entry is made upon a *pro forma* invoice is not before us and is not considered.

The judgment of the Board of General Appraisers is *affirmed*.