MacNichol Packing Co. et al. *v.* United States (No. 2821)[1]

Regulations, Compliance Condition Precedent—Salt for American Fisheries

Where Congress has offered some special grace or exemption, under regulations, strict compliance with such regulations is a condition precedent to obtaining it. Section 313, Tariff Act of 1922, provides for remission of duty on salt for American fisheries, under such regulations as the Secretary of the Treasury shall prescribe. Such regulations (arts. 684 to 693, inclusive, Customs Regulations of 1908, made to apply to the 1922 act by T. D. 39304) required that proof of such use of the salt should be submitted on or before the 1st day of January after the date of the bond or that the bond should be extended. Salt was imported in 1923, but proof was not offered until 1924 and 1925, no extension having been had. Remission was justly denied.

United States Court of Customs Appeals, March 9, 1927

Appeal from Board of United States General Appraisers, Abstract 310

[Affirmed.]

*L. D. Lamond, Marion De Vries*, and *Jesse P. Crawford* (*De Vries* and *Davis* of counsel) for appellants.

*Charles D. Lawrence* (*Kenneth G. Osborn*, special attorney, of counsel), for the United States.

---

[1] T. D. 42050.

[Oral argument January 24, 1927, by Mr. Crawford and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellants, MacNichol Packing Co., L. D. Clark & Son, R. J. Peacock Canning Co., Columbian Canning Co., Globe Canning Co., J. W. Beardsleys Sons, and Seacoast Canning Co., made 15 importations of salt, which were severally entered for warehousing, under the Tariff Act of 1922.

It has been stipulated here that protest 76407–G/512 of MacNichol Packing Co. and the reports and other papers returned therewith are typical of all the other protests. Whatever references to the facts are made herein, therefore, will be with reference to the above-mentioned protest.

The record discloses that MacNichol Packing Co. imported 59,408 pounds of salt at Eastport, Me., on October 5, 1923, which was entered for warehouse and withdrawn for consumption on the same date, bond being given thereon and it being represented when the withdrawal permit was issued that the goods were conditionally free of duty under the provisions of section 313 of said tariff act, the material portion of which follows:

*Provided*, That imported salt in bond may be used in curing fish taken by vessels licensed to engage in the fisheries and in curing fish on the shores of the navigable waters of the United States, under such regulations as the Secretary of the Treasury shall prescribe; and upon proof that the salt has been used for either of the purposes stated in this proviso, the duties on the same shall be remitted.

It further appears from the record that the warehousing bond given herein expired by its terms on January 1, 1924, that no application for renewal thereof was made by the importer, and that the same was not renewed. The collector states in his report that this salt was not used during the season of 1923, but during the season of 1924, and this fact is conceded by appellants and conclusively shown by the record.

On January 6, 1925, the importer filed with the collector three affidavits as his proof that the imported salt had been used for purposes stated in the said proviso to section 313 and asked for remission of duties upon the salt imported under said section. The collector refused to remit the duties and liquidated the same on January 16, 1925. The importer thereupon protested. Upon appeal to the court below, the various protests were consolidated and, after a hearing thereon, said protests were overruled and judgment entered sustaining the collector's classification. From that judgment the importers have appealed to this court.

In the view we take of this appeal it will be necessary to discuss only one of the questions presented. It is contended by the Government that if all that is claimed by the importers as to the use of the salt be conceded, the importers have not brought themselves within the statute and the regulations of the Secretary of the Treasury made in pursuance thereof and hence can not be sustained in their protests.

After the approval of the Tariff Act of 1922, on November 11, 1922, the Assistant Secretary of the Treasury promulgated T. D. 39304, 42 Treas. Dec. 181. This regulation provided that articles 684 to 693, inclusive, of the Customs Regulations of 1908 should be extended to cover importations of salt under said section 313. As the salt in question was imported in 1923 and as the Customs Regulations of 1923 were not promulgated until May 27, 1924, the said provisions of the Customs Regulations of 1908 apply to the importations in question. Articles 691 and 692 of said regulations are as follows:

Art. 691. *Cancellation of bond.*—The proofs above required shall be presented to the collector holding the bond on or before the 1st day of January next after the date thereof; and if it shall appear to his satisfaction that the entire quantity of salt covered by said bond has been duly accounted for, either by having been used in curing fish in accordance with the withdrawal or by warehouse or consumption entry, such collector may cancel the bond; but if he deems the same necessary, he may first require additional evidence in corroboration of the proof produced.

Art. 692. *Extension of bond—Salt unused.*—On application of the principal in the withdrawal bond, and good cause shown, the same may be extended by the collector one year, so as to allow the salt so withdrawn to be used during the time of extension in curing fish, with same privileges as if used during the first season. Salt withdrawn as aforesaid, and unused, may be entered for warehouse, or rewarehouse and again withdrawn, for curing fish under the usual regulations. In such cases care must be taken to preserve upon the entry the date of original importation, so that the warehousing privileges shall not be extended beyond the legal limit of three years from that date.

It will be observed that said articles provide, in substance, that proofs required for cancellation of the withdrawal bond must be presented on or before January 1 succeeding the date of said bond or that the bond must be extended, or the obligor will not be entitled to a cancellation thereof. Neither was done in the case before us. No extension was asked or granted and proofs were not made until 1924 and 1925. It follows that we must conclude either that these regulations are immaterial and need not be complied with or that they have the force and effect of law and that the importers, having failed to comply therewith, can have no relief.

The statute authorized the Secretary of the Treasury to prescribe regulations for the use of salt imported in bond, in curing fish taken by licensed vessels or on the shores of the navigable waters of the United States. In carrying out this duty, the Secretary of the

Treasury has provided that the salt must be so used during the same year when imported, or an extension of time must be procured. We are unable to see any hardship in such regulations, and nothing has been called to our attention to indicate that they are unreasonable. In fact, the regulations are most liberal in giving to the importers every opportunity to take advantage of the statutory provisions for remission of· duty. It is well settled that reasonable regulations of such a character have the force and effect of law.

In *United States* v. *Rettig et al.*, 2 Ct. Cust. Appls. 537, certain containers made in the United States were imported and claimed to be free of duty under paragraph 500 of the tariff act of August 5, 1909. Customs regulations required a bond and proof of American origin in such cases, which were not given at the time provided by the regulations. It was held such regulations had the force and effect of law and must be complied with, if free entry was ·to be had.

*Gump Co.* v. *United States*, 3 Ct. Cust. Appls. 137, involved the importation of antique works of art, under paragraph 717 of the tariff act of August 5, 1909. Treasury regulations provided that certain proofs must be filed with the entry, to entitle such importations to free entry. The regulations not having been complied with, the goods were held dutiable. To a like effect is *United States* v. *Morris E. & A. Ex. Co.*, 3 Ct. Cust. Appls. 146, where it is said:

Under these well-settled principles of law the regulations prescribed by the Secretary of the Treasury under the authority of Congress granted in paragraph 717, supra, are conditions precedent. In order to enjoy the benefit thereof, therefore, they must be complied with by the importer invoking that license under the terms of these regulations as therein provided at the time of the entry of the goods.

A similar case is *Kronfeld, Saunders & Co.* v. *United States*, 4 Ct. Cust. Appls. 60. In the case cited, not only were the regulations upheld but it was held that the collector had no power to waive their requirements.

*Tong & Co.* v. *United States*, 13 Ct. Cust. Appls. 133, was a case involving goods imported and valued in depreciated currency. Certain regulations of the President, promulgated by virtue of the statute, provided that a consular certificate of depreciation should accompany the invoice. The importer did not comply with this provision, but some time afterwards produced such a certificate and sought the advantage thereof. It was held the regulation must be complied with..

*Spencer, Kellogg & Sons* v. *United States*, 13 Ct. Cust. Appls. 612, involved a claimed drawback on linseed oil cake manufactured from imported flaxseed, under section 313 of the Tariff Act of 1922. Customs regulations provided for notice to ·the collector of intent to export at least six hours before lading and of identification and lading under the supervision of an inspector. These regulations were not complied with, although it appeared the importer would

have been otherwise entitled to a drawback. The court again reiterated the doctrine that such regulations have the force of law.

From these authorities, the rule is deduced that where the Congress has offered some special grace or exemption to an importer, under regulations to be promulgated, the importer must strictly comply with such regulations, so long as they be reasonable and do not seek to alter, add to, or detract from the statute itself. And this rule is one that recommends itself to our reason. If this importer is to have some special privilege which is not extended to importers of salt for other purposes, then he can not complain if he is required, as a part of said privilege, to comply with such regulations as have been here made, regulations which plainly only have in mind an annual accounting between the importer and the Government.

In view of our conclusions above, it will not be necessary to pass upon the many other questions presented here. The court below overruled the protests upon a different theory and for reasons which we have not here discussed. As we agree, however, to the correctness of the judgment entered by the court below, said judgment is *affirmed.*