(C. D. 694)

MONARCH MFG. CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 22, 1942)

*Ben H. Berry* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly*, special attorney), for the defendant.

Before OLIVER and WALKER, Judges

WALKER, Judge: These protests are directed against the refusal of the collector of customs at the subport of Atlanta, Ga., to allow drawback, under the provisions of section 313 (d) of the Tariff Act of 1930, of the internal revenue tax paid on domestic alcohol used in the manufacture of flavoring extracts which were subsequently exported. The said section reads as follows:

SEC. 313. DRAWBACK AND REFUNDS

\*        \*        \*        \*        \*        \*        \*

(d) FLAVORING EXTRACTS AND MEDICINAL OR TOILET PREPARATIONS.—Upon the exportation of flavoring extracts, medicinal or toilet preparations (including perfumery) manufactured or produced in the United States in part from domestic alcohol on which an internal-revenue tax has been paid, there shall be allowed a drawback equal in amount to the tax found to have been paid on the alcohol so used.

Preliminary to disposing of the case on the merits, we find that a motion has been made in respect to protest 10363–K to dismiss the same for failure of compliance with article 1038 of the Customs Regulations of 1931, in force and effect at the time of the manufacture and exportation of the flavoring extracts in question.

That article was prescribed by the Secretary of the Treasury apparently under authority contained in section 313 (i) of the Tariff Act of 1930, and required, among other things, that within 2 years from the date of clearance of the exporting vessel or conveyance a draw-

back entry and certificate of manufacture on customs Form 7575. be filed in duplicate, and that when filed such entry be complete as to all documents necessary to the liquidation thereof, the penalty for failure to complete such claims within the 2 years prescribed being the treatment of the claim as abandoned.

A similar regulation contained in the Customs Regulations of 1923 (article 976) was held, in the case of *United States* v. *Champion Coated Paper Co.*, 22 C. C. P. A. 414, T. D. 47422, to be "in effect a statute of limitations, unauthorized by law and * * * unreasonable and invalid."

Of course, under the drawback provisions of the Tariff Act of 1922, in connection with which article 976, *supra*, was prescribed by the Secretary of the Treasury, there was no specific authority given in the act to the Secretary to prescribe regulations governing the time within which drawback entries should be filed and completed. In subsection (i) of section 313 of the Tariff Act of 1930 specific authority was given to the Secretary to prescribe such regulations, but careful examination of the provision reveals that such authority is limited to entries filed in connection with drawback claimed on articles made with the use of imported merchandise under the provisions of section 313 (a). The authority of the Secretary to prescribe regulations with reference to drawback of the internal revenue tax paid on domestic alcohol used in the manufacture of flavoring extracts seems to be confined to those regulations contained in the third subdivision of subsection (i), and does not include authority to fix a limit upon the time when drawback entries in connection with such alcohol so used may be filed.

Section 313 (i), so far as material, reads as follows:

(i) REGULATIONS.—The Secretary of the Treasury is authorized to prescribe regulations governing (1) the identification of imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties, the ascertainment of the quantity of such merchandise used, of the time when such merchandise was received by the manufacturer or producer of the exported articles, and of the amount of duties paid thereon, the determination of the facts of the manufacture or production of such articles in the United States and their exportation therefrom, *the time within which drawback entries on such articles shall be filed and completed, to entitle such articles to drawback,* and the payment of drawback due thereon; * * * (3) the determination and payment of drawback of internal-revenue tax on domestic alcohol, including the requirement of such notices, bonds, bills of lading, and other evidence of payment of tax and exportation as the Secretary of the Treasury deems necessary * * *. [Italics added.]

It will be observed that subdivision (1), *supra*, relates only to drawback of the duties paid on imported merchandise used in the manufacture or production of articles exported from the United States. Under the circumstances, and following the *Champion Coated Paper Co.* case, *supra*, we must hold that article 1038 of the Customs Regu-

lations of 1931 had no force or effect insofar as drawback entries in connection with domestic alcohol used in the manufacture or production of flavoring extracts were concerned, and the motion to dismiss protest 10363–K must be, and it is, denied.

Proceeding to the merits of the case, we find that the basis of the collector's refusal to allow drawback apparently was failure of compliance on the part of the plaintiff-corporation with the provisions of a so-called "drawback decision," a synopsis of which is published as T. D. 40533 (B), and the general regulations with respect to manufacturing records contained in article 1074 of the Customs Regulations of 1937 and article 1053 of the Customs Regulations of 1931.

The last-named articles are couched in identical language and read as follows:

**Manufacturing record.**—The description of the alcohol required to be stated in the entry may be obtained from the package containing the tax-paid alcohol, and there shall be kept by the manufacturer of the flavoring extracts, medicinal or toilet preparations on which drawback is claimed, a record of all such preparations manufactured, the quantity of wastage, if any, and a full description of the alcohol. This record shall be open at all times to the inspection of officers of the customs.

With respect to the requirements of T. D. 40533 (B), the following explanation is necessary. On or about June 30, 1924, the predecessor of the plaintiff-corporation which was then a co-partnership doing business under the same name as the plaintiff, applied, under the provisions of the then existing customs regulations for the establishment of what is known as a "rate of drawback" on soda water flavors and bottlers' concentrates, or flavoring extracts, manufactured with the use of domestic tax-paid alcohol. The establishment of a "rate of drawback" involved a showing by the applicant to the satisfaction of certain Treasury officials that arrangement had been or would be made by the applicant to keep records which would properly identify the tax-paid material used in the manufacture of the extracts to be exported, and which would enable the determination of the quantities thereof which might be entitled to drawback. It should be noted that there is no provision in the tariff act for the "establishment of a rate of drawback," but it is obvious that the procedure was prescribed in the interests of efficient administration of the drawback laws.

In conformity with the customs regulations concerning drawback rates the predecessor of the plaintiff-corporation filed a sworn statement, dated September 2, 1924, setting forth various items of information required and reciting certain promises concerning the keeping of records. This is in evidence as exhibit 1, and its importance arises from the fact that it is referred to in the synopsis of the "drawback decision" published as T. D. 40533 (B), which reads as follows:

(B) *Extracts, flavoring.*—Manufactured by the Monarch Manufacturing Co., of Atlanta, Ga., with the use of domestic tax paid alcohol.

A manufacturing record shall be kept in the manner described in the sworn statements of the manufacturers dated September 2 and October 30, 1924, respectively, showing, in the case of each batch of flavoring extract manufactured for exportation with benefit of drawback, the batch number and date of manufacture thereof, the quantity and identity of the domestic tax paid alcohol used, the quantity and kind of flavoring extract obtained, and the number and size of the containers in which packed. A sworn abstract from such manufacturing record shall be filed with the drawback entry.

The drawback allowance shall not exceed the tax paid on the domestic alcohol used in the manufacture of the exported flavoring extracts as shown by the abstract from the manufacturing record.

Rate effective on and after July 7, 1924.

Sworn statements forwarded to the collector of customs at New York, N. Y., on December 4, 1924. (105410–11.) (Signed) McKENZIE MOSS, *Assistant Secretary.*

The sworn statement dated October 30, 1924, referred to in the "drawback decision" was not offered in evidence, and there is nothing in the record before us to show whether or in what way it modified, supplemented, or amended the sworn statement of September 2, 1924. The latter, however, under the caption "Records-Manufacturing" contains the following:

In the case of each soda water flavor or bottlers' concentrates which we export, for the benefit of drawback, we will set aside a quantity to fill export orders and in the case all batches from which these export lots are taken, we will keep an accurate record of the package and stamp numbers of the alcohol used in manufacture. Each such lot we reserve for drawback will be given a lot number and a record of the same kept, which will show the date of manufacture, the kind of soda water flavor or bottlers' concentrate manufactured and package and stamp serial number of the alcohol used for its production.

That the foregoing procedure was not carried out is amply evident from the record. It appears that in manufacturing its flavoring extracts the plaintiff-corporation did not make separate batches thereof to be used to fill export orders only, but instead it was the practice to make up a large batch at one time and store it in a tank or vat. Both domestic and export orders would be filled from that tank, and when a quantity was withdrawn for export a batch of the same or a greater amount was immediately made up and put in the tank. According to witness Hall, who was chemist for the plaintiff-corporation and had charge of its records during the time of manufacture and exportation of the flavoring extracts involved, it would be impossible to determine out of which original packages or containers of alcohol had come the alcohol contained in the flavoring extract which had been exported. The situation therefore was this: Although the responsible officers of the plaintiff-corporation knew to the ounce how much tax-paid domestic alcohol was used in the manufacture of the exported flavoring extracts, they could not state with certainty from which packages or containers of alcohol it had come.

In lieu of giving the numbers of the packages or containers of alcohol actually used in the manufacture of the exported flavoring

extract, it was the practice of the officers of the plaintiff-corporation to give the numbers of the packages or containers from which the alcohol used in resupplying the tank had been taken.

The record indicates that the foregoing practices were adopted for two reasons: (1) In the transition from co-partnership to the corporate form of business the retiring employees failed to inform their successors of the existence and requirements of the sworn statement, exhibit 1, and (2) it took from 2 to 3 weeks to make up various kinds of flavoring extracts, and, as foreign orders were infrequent, it was more expedient to make up a single batch from which both foreign and domestic orders might be filled. By this method the fresh extract was always available to fill export orders.

It would appear from the brief filed on behalf of the defendant that the "drawback decision," the synopsis of which is reported in T. D. 40533 (B), *supra*, was considered to be a regulation prescribed under the authority of section 313 (i) of the tariff act, *supra*, strict compliance with which is a condition precedent to the recovery of drawback. *Spencer, Kellogg & Sons, Inc.* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459, *MacNichol Packing Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 400, T. D. 42050, and *Nestle's Food Co., Inc.* v. *United States*, 16 Ct. Cust. Appls. 451, T. D. 43199, are cited, among others, for the rules that

Reasonable regulations of the Secretary of the Treasury made in pursuance of law, have the force and effect of law.

and that strict compliance with such regulations in relation to drawback is a condition precedent to the right of recovery. It is observed that all of the adjudicated cases adhering to these rules had reference to the general regulations promulgated by the Secretary of the Treasury for the administration of the drawback laws. In *Gulf Refining Co.* v. *United States*, T. D. 48399, it was held, referring to the so-called "drawback decision" there involved, that it was merely a direction, rather than a regulation, since it did not apply to all exporters of similar merchandise subject to drawback.

We are satisfied, however, without considering the violations of the "drawback decision" in the case at bar, that plaintiff cannot recover drawback for the reason that the general regulations with respect to manufacturing records contained in article 1053 of the Customs Regulations of 1931 and article 1074 of the Customs Regulations of 1937, which were in force and effect during the period of manufacture and exportation of the extracts involved, were not complied with. These regulations, heretofore quoted, require that records shall be kept showing a full description of the alcohol used in the manufacture of such extracts. They have for their purpose the identification of domestic alcohol used in the manufacture or production of flavoring extracts subsequently exported for benefit of drawback, and are not

claimed to be unreasonable or otherwise invalid. They are mandatory in character, and failure to comply therewith is a bar to the recovery of drawback. It is apparent from the testimony offered on behalf of the plaintiff that such records were not kept.

At the close of plaintiff's case counsel for the defendant moved the dismissal of the protests herein on the ground that the plaintiff had not made out a cause of action or a *prima facie* case. In view of the record, that motion must be granted, and judgment will issue accordingly.