**No. 61737.**—Gallagher & Ascher Company *v.* United States, protests 284836–K/7743 and 297869–K/8179 (Chicago).

FORD, Judge: The two suits listed above challenge the action of the collector of customs in classifying certain imported merchandise as aluminum ingots in crude form (not including scrap) and levying duty thereon at the rate of 1½ cents per pound under paragraph 374 of the Tariff Act of 1930, as modified by T. D. 52739. Plaintiff claims said merchandise to be entitled to entry free of duty under Public Law 869, 81st Congress, as amended, the pertinent portion of which reads as follows:

Sec. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap", as used in this Act, shall mean all ferrous and non-ferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

At the trial of this case, two well-qualified witnesses testified for the plaintiff. Their testimony establishes that the subject merchandise consists of aluminum ingots which were obtained by taking scrap aluminum turnings and reducing them in a furnace to ingot form; that these ingots were not made purposely to any kind of specification; that these ingots had no uniformity of quality or analysis; that the turnings had no other use; and that they were reduced to ingot form solely for convenience in transportation and handling, because the cost of shipping in the form of turnings would have been prohibitive.

The evidence also establishes that the subject ingots were used for remanufacturing purposes as part of the mix in the production of specification ingots; that the imported ingots had no other use and were fit for no other use than to be blended with other aluminum scrap to make specification ingots; that these imported ingots were not fit for direct manufacture, because they did not have the

required shape or weight for use in rolling mills or extrusion mills or for castings; that they could not be used for deoxidizing purposes, because they were too large and, in their imported condition, were too dirty, tarnished, and contained moisture, and had no uniformity of analysis; that the imported ingots "were used over a period of time as part of a mix to be melted to produce a specification ingot"; that said ingots were:

Mixed in a molten batch in the production furnace. In other words, the furnace is built up from an empty furnace to a full furnace by charging scrap aluminum into it, and our heat is built up in that way. This ingot forms a portion of the mix in some of these heats.

The witness also testified that:

We produced what we call a three-piece, two-notch ingot, which is approximately 26 to 28 inches long, and about 3 inches wide, about 1½ inches thick, and this ingot has a bright, shiny appearance, and is free of oxides, and is analyzed in our laboratory, and we guarantee the analysis on the entire heat to be the same.

\* \* \* \* \* \* \*

That is used merely as a constituent of the heat, to help make up the blend necessary to produce the required analysis that we are trying to make.

The above testimony, which is not contradicted, places the involved merchandise squarely within the provisions of said Public Law 869. We, therefore, hold all of the merchandise covered by the two suits listed above to be entitled to entry free of duty under the provisions of said Public Law 869, as alleged by the plaintiff. Judgment will be rendered accordingly.