GUMP Co *v.* UNITED STATES (No. 758).[1]

NEW TREASURY REGULATIONS AND GOODS IN BOND.

The regulations of the Secretary of the Treasury, duly promulgated, requiring an importer who desires to obtain the benefit of paragraph 717, tariff act of 1909, to file at the time he makes entry of his merchandise certain affidavits, is a requirement applying to merchandise in a bonded warehouse at the time the act of 1909 went into effect; and as to merchandise of this description the regulations will be taken to refer to the time when the necessary steps were taken to withdraw the goods from bond, duty ascertained and liquidated, a delivery permit issued, and not to a later time.

United States Court of Customs Appeals, April 1, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7264 (T. D. 31812).

[Affirmed.]

*Stanley Jackson* for appellant.

*William L. Wemple*, Assistant Attorney General (*William A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Prior to the enactment of the tariff act of August 5, 1909, the importers entered under bond for warehousing the merchandise involved in this case which was then dutiable, but which under the provisions of paragraph 717 of the tariff act of 1909, herein below quoted, might be entitled to free entry under the conditions prescribed in said paragraph, the relevant part of which is as follows:

717. * * * Other works of art * * * which have been produced more than one hundred years prior to the date of importation, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

The tariff act took effect August 6, 1909.

Under the authority of paragraph 717 the Secretary of the Treasury promulgated on the 20th day of August, 1909, general regulations relating thereto, which are as follows (see T. D. 29958):

Importers making entry of articles under said provision of law will be required to produce upon entry, in addition to the consular invoice required by law, the following evidence to show that such articles were produced more than 100 years prior to the date of their importation:

1. An affidavit of the ultimate consignee stating that he has investigated the origin and history thereof, and believes the same to have been produced more than 100 years prior to the date of their importation, which shall be substantially in the following form:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

2. A declaration of the foreign seller or shipper certified by the United States consul at the place of shipment, stating the name of the producer of such articles and the date and place of their production, and also stating the name and residence of the person from whom and the date when such seller or shipper acquired the same; provided,

however, that if such seller or shipper is not in possession of all such facts, he may state in lieu thereof such other facts as may be in his possession tending to show that such articles were produced more than 100 years prior thereto, which declaration shall be substantially in the following form:

\*        \*        \*        \*        \*        \*        \*

A careful examination of such articles should be made by the appraising officer to ascertain whether the same are works of art or articles of the character provided for in said provision of law, and also whether the same were, in fact, produced more than 100 years prior to their importation, and his findings in such regard should be clearly stated in his return upon the invoice, which return and the collector's report thereon, together with all papers and affidavits pertaining to the entry, will be forwarded by the collector to the department for final determination.

The merchandise all remained in the bonded warehouse until after September 1, 1909, and was in fact withdrawn for consumption in three different lots—one on September 15, another November 11, 1909, and the other on the 6th day of January, 1910. The entry was liquidated September 3 and the protest filed September 14, 1909.

It appears by the letter of the appraiser to the collector of customs, embodied in the record and which was in answer to the protest, that the appraiser made no examination as to the antiquity of the articles because no claim of antiquity was made at the time of entry, and the appraiser did not know that such claim would be made. The truthfulness of the statements in this letter is not challenged.

At the time the merchandise was so withdrawn for consumption from the bonded warehouse the importers had not complied with the aforesaid regulations of the Treasury Department, and it was assessed for duty by the collector, against which assessment the importers protested, claiming free entry under paragraph 717 upon the ground that the merchandise was works of art produced more than 100 years prior to the date of importation.

Sometime (but the precise date can only be inferred) the importers produced and filed affidavits of the foreign shipper and of the ultimate consignee, both of which were duly subscribed and sworn to, as required by said regulations, and which, if seasonably filed, it is assumed for the purposes of this case, were a sufficient compliance in that respect with the regulations aforesaid. They were dated, respectively, October 12 and November 12, 1909.

As already stated, it appears that neither of these affidavits was before or considered by the collector at the time duty was assessed upon the merchandise.

The Board of General Appraisers, upon the hearing of the protest, found, and, as we think, upon sufficient and competent evidence, that the importations were works of art; and there was evidence that would warrant the finding, although the board did not make

the same, that they were produced more than 100 years prior to importation.

The board overruled the protest upon the ground that the before-mentioned regulations of the Secretary of the Treasury had not been complied with because the affidavits were not filed at the time the merchandise was withdrawn from warehouse.

The importers here contend that, inasmuch as no regulations were in force relating to this merchandise at the time the goods were entered in bond for warehousing, no obligation devolved upon them to furnish to the customs officers the affidavits required by the regulations before withdrawing the goods from warehouse, and in that connection claim that withdrawal from warehouse is not an entry within the contemplation of such regulations.

The Board of General Appraisers held that the word "entry" in the regulations meant, as applicable to this case, that the affidavits referred to must be filed at the time the goods were withdrawn from the bonded warehouse, which act the board characterized as a "withdrawal entry." The importers criticize the use of this term and claim that an entry by such name is not recognized in the customs law, and that the entry referred to in the regulations of the Secretary of the Treasury is that made when the merchandise is imported.

We do not understand the importers to contend that the provisions in the regulations relating to the affidavits that must be filed with the entry are unreasonable, nor do they appear to us so to be. The law is well settled that the reasonable regulations of the Secretary of the Treasury, when he is authorized by statute to establish the same, are entitled to and have the force of law. Lunham *v.* United States (1 Ct. Cust. Appls., 220; T. D. 31258); McBride *v.* United States (1 Ct. Cust. Appls., 293; T. D. 31354).

In the case last cited this court had occasion to consider regulations relating to the importation of works of art imported expressly for presentation to a national institution, etc. Under the regulations there involved it was provided that articles might "be admitted to entry free of duties upon the filing with the entry of an affidavit by the importer showing that the articles were expressly imported for presentation to the institution named in the entry, together with letters of presentation and acceptance from the donors and donees, respectively." It was contended there that the prescribed affidavit and letters of presentation and acceptance need not be filed at the time of entry, and that they might be filed later. There was no contention but that the word "entry" as used in the regulation had the meaning ordinarily attributed to it in customhouse speech and referred to the document required to be made and filed with the collector as preliminary to the entry of the goods.

In considering the purpose of the regulation it was said by the court, speaking by Montgomery, presiding judge, relating to the duties of the collector:

He is expected to pass upon the importation and to liquidate the entry, and the goods are to be admitted free of duty upon the filing with the entry of an affidavit by the importer and the other requisite papers. Obviously these papers must be before the collector for action, and they must be filed at a time which will admit of his taking such action. Otherwise it must be held that the usual function of the collector of liquidating the duties in such a case is one which may be ignored by the importer, and a showing subsequently made for original action by another tribunal. This is a construction of the regulation not to be accepted except upon the extremest necessity.

That language, in view of the similarity of the cases, would clearly be applicable to this case provided the merchandise here had been imported subsequent to the date when the act of 1909 took effect; and it is because of that difference that the importers claim this case should be distinguished from that.

At the time the merchandise here involved was brought into this country it was dutiable under the law then in force. Section 29 of the act of 1909, however, provided in substance that on the date when the act took effect all merchandise previously imported for which no entry had been made, or previously entered without payment of duty and under bond for warehousing for which no permit of delivery had been issued, should be subject to the duties provided for in the act; while paragraph 717 provided that the merchandise here, although it would have been dutiable at the time it was imported if entered for consumption, nevertheless, by reason of the fact that it was entered under bond for warehousing and no permit of delivery issued therefor, might take the benefit of the new tariff law, provided such regulations as to proof of antiquity as the Secretary of the Treasury might prescribe were complied with.

The Secretary of the Treasury, we think, duly and seasonably promulgated the regulations in question; and if found applicable it was the duty of the importers to comply therewith if they desired to claim free entry.

Although in fact brought into this country under the prior law no duty had been paid on the merchandise because advantage had been taken of the provisions of the law which made it possible to defer such payment until it was entered for consumption—in other words, until it became a part of the merchandise of the country—so that the entire act of importing goods for consumption was still incomplete and the completion thereof required a withdrawal from the warehouse and such proceedings as would admit them to consumption here. We think this may be as well designated by the term "withdrawal entry" or "entry for withdrawal" as any, because it is the final act of entry which withdraws the merchandise from bonded warehouse and com-

pletes the importation of merchandise designed to become a part of commerce here.

It is not the name by which it is called but the fact accomplished thereby that becomes important. The goods were in bond; they must be removed therefrom to complete the importation; some act of importers in that behalf was necessary, and the filing of some papers with the customhouse officials thereby involved; and we find no difficulty in holding, as did the board, that the fair interpretation of the aforesaid regulations of the Secretary of the Treasury relating to the word "entry" is applicable to that act and entry, which may appropriately be termed a "withdrawal entry" or "entry for withdrawal." The use of either of these terms as descriptive of the act is not without high judicial sanction. Westray *v.* United States (18 Wall., 322, 329); Fabbri *v.* Murphy (95 U. S., 191); Merritt *v.* Cameron (137 U. S., 545). See also Revised Statutes, section 3294, and Customs Regulations of 1908, article 248 *et seq.*

We conclude therefore that the regulations of the Secretary of the Treasury that an importer desiring to obtain the benefit of paragraph 717 should, at the time of making entry of his merchandise, file the affidavits therein prescribed applied to merchandise in bonded warehouse at the time the act of 1909 took effect, and referred to the time when the requisite steps were taken to withdraw the same from bond, have the duty thereon ascertained and liquidated and delivery permit issued therefor.

The only question remaining to be considered is whether, having failed to comply with these regulations, the importers may, nevertheless, upon appeal to the Board of General Appraisers from the assessment of duty, show the existence of such facts as would have warranted the admission of the merchandise to free entry provided the regulations had been complied with.

We think this question must be answered in the negative. To hold otherwise is in effect to say that the regulation of the Secretary of the Treasury that the documents called for thereby should be before the customs officials at the time of appraisal and assessment is unreasonable, and that importers may disregard the same at their pleasure. We think it is entirely reasonable that importers claiming the benefit of free entry of works of art more than 100 years old should be required to furnish to the customs officials as preliminary to the determination of that question the information required by the regulations. By so doing such officials are given information to enable them to make intelligent investigation as to the truth of the claim if they desire, and they also have afforded to them the prima facie evidence, which the affidavits required at least furnish, that the importations are in good faith claimed to possess the requisite degree of antiquity.

It follows that upon the authority of the McBride case, hereinbefore referred to, the judgment of the Board of General Appraisers should be, and it is, *affirmed.*