KRONFELD, SAUNDERS & Co. *v.* UNITED STATES (No. 966).[1]

FILING PROOF SHOWING ARTICLE IS AN ANTIQUE.

> It is not within the discretion of a collector to waive the production of proof of the facts going to show an article is an antique within the last provision of paragraph 717, tariff act of 1909. The regulations governing the admission of antiques were in force at the time the lyre in a screen here was imported. These regulations unconditionally required that the specified papers in proof of antiquity should be filed on entry of the importation. The regulations were not complied with.—Martin, jr., *v.* United States (3 Ct. Cust. Appls., 384; T. D. 32982).

United States Court of Customs Appeals, March 21, 1913.

APPEAL from Board of United States General Appraisers, Abstract 28826 (T. D. 32618).

[Affirmed.]

*Walden & Webster* for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *William A. Robertson,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

This appeal relates to a certain musical instrument more than 100 years old, which is described as a lyre in a screen. The collector assessed the article with duty at 45 per cent ad valorem, under the provisions for musical instruments contained in paragraph 467 of the tariff act of August 5, 1909.

The importers protested, claiming free entry for the article as a work of art or artistic antiquity more than 100 years old, within the last provision of paragraph 717 of the act.

The protest was duly submitted to the Board of General Appraisers, and was overruled by the board solely upon the alleged ground that the importers had not complied with the official regulations which required the filing of certain proofs of the antiquity of the article at the time of entering the importation. From that decision of the board the importers now appeal to this court.

The present tariff act became effective on August 6, 1909. Paragraph 717 of the act provides for the free entry of certain articles as works of art or artistic antiquities if more than 100 years old at the time of importation. It is, however, specifically provided by paragraph 717 that the free importation of all such articles shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

On August 20, 1909, the Secretary of the Treasury issued a circular letter in which the regulations contemplated by the foregoing provisions were defined and prescribed. (T. D. 29958.) It was thereby required that an importer who claimed free entry for an article more than a hundred years old, under the terms of paragraph 717, should produce upon entry, in addition to the consular invoice, two certain

---

[1] Reported in T. D. 33308 (24 Treas. Dec., 491).

papers in proof of the antiquity of the article, namely, an affidavit of the ultimate consignee in a certain form and to a certain effect, and also a declaration of the foreign seller or shipper, certified by the United States consul at the place of shipment, containing certain prescribed statements.

There was no provision in the regulations whereby this requirement might be waived by the collector, nor whereby a bond might be filed by the importer at entry conditioned for the production of the papers at a later date. It may be noted, however, in passing, that afterwards, viz, on February 1, 1911, the regulations upon this subject were modified so as to permit collectors to accept a bond for the subsequent production of the specified papers in case the same are not produced upon entry. (T. D. 31263.)

The present importation was shipped from France on August 19, 1909, just 13 days after the governing act became effective. On August 20, as above stated, the Secretary of the Treasury issued the regulations requiring the production of the two prescribed papers which were to be filed with the consular invoice upon entry. These regulations were published as speedily as could be. On September 10 the importation arrived at the port of New York, and on September 11 entry was made thereof without the production of the required papers. Subsequently, viz, on October 1, the owner's affidavit was filed; and on October 27 and November 5, respectively, two statements of the foreign sellers and shippers were filed.

The collector liquidated the entry on December 28 and assessed the importation with duty solely upon the assumed ground that the article was not a work of art or artistic antiquity, even if it were more than 100 years old. The collector noted no objection upon the failure of the importers to produce the prescribed papers at the time of entering the merchandise. In his report to the board the collector referred to the importation as the "lyre in screen * * * covered by the seller's and owner's affidavit." Afterwards the collector became convinced that the article was in fact an artistic antiquity and that his assessment was erroneous. He therefore stated in his report to the board that—

This office stands ready to reliquidate the entry and pass the said lyre free of duty after the board of appraisers has passed upon the claim as to the furniture of wood which was returned as bearing "no evidence of being 100 years old" and upon which duty was assessed at 35 per cent under paragraph 215.

The protest was submitted in due course to the board for decision, with the collector offering to reliquidate the entry and admit the article without duty, and with no mention made by counsel concerning the delay of the importers in producing the required papers in proof of antiquity. Upon an inspection of the original papers however, the board became apprised of the latter fact, and for that reason alone overruled the protest. And this constitutes at present the real

issue in the case, namely, whether or not the board erred in holding that the importation was not qualified for free entry because of the failure of the importers to produce the several prescribed papers in proof of antiquity at the time of entry.

The strong argument in favor of the importers consists, of course, in the apparent hardship which they would suffer, without fault on their part, in case exact compliance be required with the regulations governing the subject. It may be repeated that these regulations were issued the day after the article was shipped from France, and could not have been fully published until some days later, and the importers were not able to procure the necessary papers in time to file them upon the entry of the importation on September 11.

Notwithstanding the foregoing considerations, the court is constrained to express the following conclusions:

The regulations dated August 20, 1909, unconditionally required that the specified papers in proof of antiquity should be filed at the entry of the importation. This requirement is unmistakable and does not admit of contradictory constructions. It can not, therefore, be assumed that the collector followed his construction of the regulations when he accepted and evidently approved the papers which were filed at a later date. It must rather be assumed that the collector felt himself authorized to waive a strict compliance with the official regulations in favor of a course which seemed to him to be so entirely equitable and just. His acceptance of the papers after the entry, without objection or comment, was intended by him to be a waiver of strict compliance with the literal requirements of the instructions. However, it has been held by this court that the collector has no power to waive such a requirement. See Martin, jr., v. United States (3 Ct. Cust. Appls., 384; T. D. 32982). The case just cited is analogous to the present case in several points and is cited generally as authority for the conclusions herein announced. Among other relevant principles that case also holds that the right to object to such an irregularity is not lost to the Government simply because of the fact that no objection is actually made at the time by the collector or by counsel for the Government before the collector.

And next, the regulations of the Secretary of the Treasury upon this subject have been held in general to be reasonable, and they do not lose that character as applied by the board to the present importation. See Gump Co. v. United States (3 Ct. Cust. Appls., 137; T. D. 32384). In the present case the importers were advised by the terms of paragraph 717 that free entry of such merchandise as was described therein was to be governed by regulations which would soon be issued by the Secretary of the Treasury. When the importers shipped the present merchandise on August 19 they were bound to observe that these regulations might be issued, and indeed were very likely to be issued, while the importation was in transit, and that, if

so issued, they would govern the importation upon its arrival at port. The importers therefore had it in their power either to delay exportation or to make immediate shipment and thereby assume the risk of possible inability to comply with the imminent regulations at the time of entry. This risk was no more than that their merchandise might be denied free entry and be subjected to certain tariff duties which were already known to the importers from the terms of the act. The importers could hardly overlook the fact that such proofs of antiquity as would be required by the regulations would almost certainly be required at entry. Therefore they were not wholly unadvised of the contingency which finally accrued in the case, and the court would not be justified in holding the regulations unreasonable and void as to this importation because of the possibility of such an occurrence. Nor does such a condemnation of the earlier regulations. necessarily follow from their amendment at the later revision of the rules.

It may furthermore be said that when the protest was submitted to the board for trial, the board was called upon to decide whether or not the importation was entitled to free entry under paragraph 717 and also under the Treasury regulations supplementary to that paragraph. That issue necessarily included both the character of the article and the sufficiency of the proofs of antiquity under the regulations. The original papers were part of the records, and were before the board; therefore the board was required to pass judgment upon them, in deciding whether the articles were antiquities and also whether the proofs of antiquity had been duly filed at entry.

In this view of the case, the court holds that there is no error in the decision of the board, and the same is *affirmed.*

DE VRIES, Judge, dissents.