The judgment of the United States Customs Court is, therefore, *affirmed.*

UNITED STATES *v.* WILLIAM A. BIRD (No. 3055[1])

[1] T. D. 42876.

United States Court of Customs Appeals, June 15, 1928

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument May 7, 1928, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

An article invoiced as "one antique Chinese silk rug" and entered as an "oriental rug—artistic antiquities" was imported at New York and was classified by the collector for duty as an oriental rug under paragraph 1116 of the Tariff Act of 1922. Accompanying the entry were the certificate and affidavit of the seller and the owner, in attempted compliance with the customs regulations, hereinafter more particularly referred to. The importer protested, claiming the goods to be free of duty as artistic antiquities under paragraph 1708 of said act.

On the hearing before the Customs Court three witnesses were called by the importer to testify as to the character of the imported article and its use. There were also introduced, without objection, the certificate and affidavit attached to the entry, hereinbefore referred to. It is also claimed that an oral stipulation was made upon the trial, to the effect that the imported merchandise was an artistic antiquity. No attempt was made to prove, on the trial, who was the producer of the imported article, or the person or persons from whom it was acquired by the seller, and no evidence was offered on this subject.

The Customs Court sustained the protest and the Government appeals. In so doing, several points are presented for our consideration. But one, however, will be particularly noticed, namely, that the court below erred in not overruling the protest because of the fact that the customs regulations had not been complied with.

Paragraph 1708, under which free entry is claimed, is as follows:

PAR. 1708. Works of art (except rugs and carpets), collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced more than one hundred years prior to the date of importation, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

In determining the issues presented in this case it will not be necessary to pass upon the question as to whether the court below correctly found, on the evidence, that the imported article was not a rug. Nor is it necessary to inquire as to whether the word "rug" as used in paragraph 1708 refers alone to floor coverings.   Irrespective of these matters, we think the court should have overruled the protest because of the failure of the importer to show that he had brought himself within the scope of the applicable Treasury regulation, article 423, Customs Regulations, 1923.   That regulation is in its relevant part, as follows:

ART. 423. Artistic antiquities.—Works of art (except rugs and carpets), collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced more than 100 years prior to the date of importation, will be admitted free of duty, upon compliance with the following regulations:

There shall be attached to the invoice filed upon entry a certificate of the foreign seller or shipper before the American consul at the place of shipment in substantially the following form:

————— —————,
—————— —————, 19—.

I, ———— ————, do hereby certify that I am the ———— of certain works of art, viz, ————, covered by consular invoice No. ————, certified before the American consul at ————, on the ———— day of ————, 19—; that the said ———— were acquired by me from ———— on the ———— day of ————, 19—; and I further declare that ————.

————— —————.

I, ———— ————, consul of the United States at ————, do hereby certify that the above declaration was subscribed and sworn to (or affirmed) before me by ———— ————, on this ———— day of ————, 19—, and that the statements therein contained are true, to the best of my knowledge and belief.

————— —————,
*U. S. Consul.*

An affidavit by the owner on Customs Form 3343 shall also be filed on entry.

The application of this statute in cases like that at bar is not a matter of first impression with this court.   We have had occasion to pass upon a similar question in *United States* v. *Tsai*, 9 Ct. Cust. Appls. 42, T. D. 37902.   In that case the Customs Regulations of 1915, article 395, were identical, so far as material, with those above quoted, in the regulations of 1923.   In the case cited the importer attached a statement, in which he failed to state the names of the persons from whom the antiquities in question, imported from China, were procured.   The court said:

The board seems to lay stress upon the fact that the requirement that a certain form be followed is that the certificate shall be in "substantially" the form indicated.   There seems to be no contention made that the regulations such as are here in question are not within the authority of the Secretary of the Treasury, nor could there well be, in view of our decisions in *Martin* v. *United States*, 3 Ct. Cust. Appls. 384, T. D. 32982; *United States* v. *Thomas*, 3 Ct. Cust. Appls. 142, T. D. 32385; *Gump* v. *United States*, 3 Ct. Cust. Appls. 137, T. D. 32384; and *McBride* v. *United States*, 1 Ct. Cust. Appls. 293, T. D. 31354.

Without the necessity of quoting from these cases it may be stated that they hold that the requirement of a certificate similar in form to these under a similar authority conferred by statute may be made by regulation of the Secretary of the Treasury, and that the purpose of requirements similar to those named in the regulations here in question is to afford to the customs officers an effective basis for investigation as to the claim made if they desire to make it, so that such officers may determine whether or not a prima facie case of antiquity has been made. *United States* v. *Thomas, supra.* See also *Kronfeld* v. *United States,* 4 Ct. Cust. Appls. 60, T. D. 33308.

It gets down to the question, then, as to whether there has been a substantial compliance with the terms of this regulation. To say that there has been a substantial compliance would indicate that much of what is contained in the required certificate is meaningless. It is manifest from a reading of the certificate to be signed by the shipper or seller that the party from whom the alleged antiquity is acquired must be named. No attempt was made in this case to name any one party, but the term "various persons" was employed. This affords no information to the officers of customs as a basis for an investigation. On the contrary, it would appear to be withholding information, if not in the possession of the shipper, yet such as should be easily acquired.

Nor is the date given. It is idle to say that any date within a period of two years is sufficiently accurate. Some variation might be allowed, and some description of the person from whom the goods were acquired, which would furnish means of identification, but here no attempt is made to furnish the means of identification, either as to the date or as to the persons from whom the goods were acquired.

We are unable to agree with the board that this was a substantial compliance with the regulation, and feel compelled to hold otherwise.

The *Tsai* case, *supra*, differs from the case at bar in this respect, that the collector in that case did not accept the proffered proofs, and here they seem to accompany the entry and other papers. In the *Tsai* case the collector so refused to accept them because they failed to specify the names of the producers, the date and place of production, and the names and residences of the persons from whom and the dates when the antiquities were acquired by the shippers. But in both the *Tsai* case and here the question submitted is as to the legal sufficiency of the proffered certificate and affidavit.

The Treasury regulations hereinbefore quoted must be given the force and effect of law. It will be observed that it recites that the certificate accompanying the entry shall be in "substantially the following form." This must be given a reasonable construction. The suggestion is made that a literal compliance with the provision requiring the name of the producer of an artistic antiquity as a prerequisite of importation would prevent the entry of many desirable artistic antiquities. It will be observed that the Treasury regulation also requires the affidavit of the owner that the imported article is over 100 years old. Where this is furnished, together with a statement that the importer, because of its antiquity, has been unable to obtain the name of the producer, there would be much to support the view that this was a substantial compliance with the

regulation. But such is far from the case presented in the *Tsai* case, *supra*, and from the case at bar.

The seller in the case at bar filed his certificate with the entry, the relevant portion of which is as follows:

I, Jack Mason, do hereby declare that I am the seller of certain works of art covered by consular invoice No. 177, certified before the American vice consul at Shanghai, China, on the 10th day of Jan., 1924; that the following facts are true of said articles:

| Description | Name of producer | Date and place of production | Name and residence of persons from whom acquired | Date when so acquired |
|---|---|---|---|---|
| 1 Chinese silk rug, 6′ x 9′ 9″ | Unknown | Pekin | Unknown | Oct., 1923. |

\*      \*      \*      \*      \*      \*      \*

I further declare that all the above are more than one hundred years old to the best of my knowledge and belief.

Here, it will be observed, the seller gives the date of purchase and the place where purchased, but does not give the name of the person from whom purchased, averring that it is unknown. If he knew one, why could he not give the other? No reason is apparent or offered why he did not do so. In doing as he did, he violated, without apparent reason, the regulations which he must comply with if he is to have free entry of his goods.

But it is said that he need not so comply because thereafter, upon the trial before the Customs Court, the customs officials admitted that the imported goods were artistic antiquities.

We have refused to so hold in former cases, notably in *Kronfeld, Saunders & Co. v. United States*, 4 Ct. Cust. Appls. 60, T. D. 33308.

In the case last cited the collector had accepted defective papers from the importer at a time after entry. We said:

His acceptance of the papers after the entry, without objection or comment, was intended by him to be a waiver of strict compliance with the literal requirements of the instructions. However, it has been held by this court that the collector has no power to waive such a requirement. See *Martin, jr., v. United States*, 3 Ct. Cust. Appls. 384, T. D. 32982. The case just cited is analogous to the present case in several points and is cited generally as authority for the conclusions herein announced. Among other relevant principles that case also holds that the right to object to such an irregularity is not lost to the Government simply because of the fact that no objection is actually made at the time by the collector or by counsel for the Government before the collector.

The proper administration of the customs law requires that the importer comply with the reasonable customs regulations, duly promulgated. The right of free entry in case of artistic antiquities is made dependent upon compliance with the reasonable regulations of the Treasury Department therein. To hold that the importer may fail to comply with such regulations, and, if he succeeds in

obtaining free entry from the collector, may make his proof orally thereafter, if necessary, is to practically nullify the customs regulations, and is a reversal of the line of authority in this court since its creation.

Even if an importer might supplement an insufficient certificate and affidavit by proofs subsequently offered, it would avail the importer nothing here, because he entirely failed to offer, on the hearing, any evidence as to the name of the producer of his goods, or of the name of the person or persons from whom it was purchased by the seller, or any reason for his failure to state the same.

For these reasons, the judgment of the court below should be and is *reversed*.

### DISSENTING OPINION

SMITH, Judge: I regret very much that I find myself unable to concur in the opinion of the majority.

A hand-woven fabric, invoiced as a rug, imported at Buffalo, N. Y., was classified by the collector of customs as a hand-woven oriental silk rug, and assessed for duty at 55 per centum ad valorem under that part of paragraph 1116 of the Tariff Act of 1922 which reads as follows:

1116. Oriental  *  *  *  and other carpets and rugs not made on a power-driven loom  *  *  *  all the foregoing plain or figured, 55 per centum ad valorem.

The importer protested that the merchandise was not a rug or floor covering but was an antique tapestry or silk wall piece entitled to free entry under section 201 and paragraph 1708 of the free list, the pertinent parts of which read as follows:

201. That on and after the day following the passage of this act,  *  *  * the articles mentioned in the following paragraphs, when imported into the United States  *  *  *  shall be exempt from duty:

1708. Works of art (except rugs and carpets), collections in illustration of the progress of the arts  *  *  *  *artistic antiquities*  *  *  *  which shall have been produced more than one hundred years prior to the date of importation *  *  *.   (Italics not quoted.)

The United States Customs Court sustained the protest and the Government appealed.

The report of the appraiser shows that the merchandise was examined by J. D. Wolf and that it was returned by him as "one oriental silk rug, hand woven, designed and of sufficient depth of pile to be used for floor coverings."

On the hearing before the United States Customs Court the following colloquy took place between Mr. Tompkins, counsel for the importer, Mr. Wolf, examiner of merchandise, and Mr. Kavanagh, counsel for the Government:

Mr. TOMPKINS. As I understand from my conversation with Mr. Wolf, the examiner, we can stipulate and agree in open court that the merchandise is an

artistic antiquity, but it was excluded, as I understand, from the free list, paragraph 1708, by reason of the specific exception from that paragraph of rugs and carpets. Is that correct, Mr. Wolf?

Mr. WOLF. Yes, sir.

Mr. KAVANAGH. Did you say that was an artistic antiquity, Mr. Tompkins?

Mr. TOMPKINS. Yes, sir.

Whereupon Mr. Kavanagh, counsel for the Government, moved to dismiss the case on the ground that the affidavits failed to state the name of the producer, the name and residence of the person from whom acquired, and the date of production.

The motion to dismiss was reserved by Justice Young for decision by the division of the court to which the case was assigned for determination.

On the trial the importer introduced in evidence without objection the certificate of the seller and the affidavit of the owner as proof of compliance with Treasury regulations. It appears from the certificate which was sworn to before the American consul at Shanghai, first, that Jack Mason was the seller of one Chinese rug produced in Pekin, and that the rug was acquired by him in October, 1923; second, that the name of the producer and the date of production were unknown; third, that to the best knowledge and belief of said Mason said rug was over 100 years old. The affidavit was made by Mrs. Jennie C. Fassett and stated that she was the owner of the rug; that she had investigated the ownership and history of the article and verily believed the same to be produced more than 100 years prior to the importation thereof at Buffalo, N. Y., on the 5th of February, 1924.

Arthur B. Sliter testified that he was private secretary to Hon. J. Sloat Fassett during his lifetime and that after the death of Fassett he became one of the executors of Fassett's estate; that the silk fabric was hung on the wall of the Chinese room of Fassett's home by means of little staples attached to the edge of the fabric; that the importation was never used as a floor covering and always as a hanging; that the silk lining was worn and in some places threadbare; that the witness was not an expert on rugs or tapestries.

C. N. Kierst testified that he was merchandise manager of William Hengerer Co.; that he had been buyer of domestic and oriental rugs for a period of 20 years and that he had handled thousands of such rugs; that in all his experience with domestic and oriental rugs he had never seen an article of the kind imported or of the type of weave used in making it; that as to the "weaving, the embossing on it, on the ingrain, the construction on it, is nothing as to the Chinese rug. So far as the Persian rug is concerned, it has no appearance of a Perisan rug"; that the article could be put upon the floor but that it would go to pieces; that the importation is such an unusual type and such an unusual piece that it appeared to be a panel and more nearly

resembled those rugs or tapestries which, though less artistic than the importation, were used as panels; that the importation was a work of art and in the opinion of the witness would not bear floor use; that the article imported was threadbare around the edge but that that effect could be produced in other ways than by walking on it; *that besides rugs which are floor covering there are rugs which are not designed for the floor, particularly steamer rugs and table rugs;* that in some places on the fabric the nap was gone.

J. J. Fitzgerald testified that he had been buyer of floor coverings for William Hengerer Co. for eight years; that he had bought thousands and thousands of rugs and that on account of the construction of the importation and the material used in making it, it was unsuitable for floor use; that the witness would say that the fabric was used mostly as a hanging; that is to say, as a panel. On cross-examination the witness stated that the most expensive rug he had ever purchased was one that cost $15,000, which was made of wool; that he had purchased very expensive Chinese rugs; that the damaged places on the article in issue might have been produced by moths; that he had purchased silk rugs that cost as high as $1,000 and that the majority of such rugs were made and were fit for hanging purposes only.

The Standard Dictionary seems to bear out the witnesses in their statement that the term "rug" is not limited to floor coverings. According to that authority Caucasian, Chinese, Indian, Persian, Turkish, and Turkoman rugs are the six main classes of oriental rugs, some of which are used as hangings or portières. The Chinese rug design consists of detached natural motifs on lattice and fret ground, *pile usually wool,* occasionally silk in antiques. See "Rugs," Standard Dictionary.

I am of the opinion that the weight of the testimony in this case establishes that the article which is the subject of protest is not designed or fit for use as a floor covering and is suitable for use as a panel or hanging. Indeed, the undenied fact that the importation has a silk backing strongly indicates a hanging rather than a floor fabric.

Three witnesses for the importer, who were cross-examined by the Government, testified that the article imported was not a rug and was a hanging or panel. The United States Customs Court found as a fact on the weight of the testimony that the importation was not a rug or carpet but a hanging or tapestry which was an antique. On the evidence in the case and the finding of the United States Customs Court I think that the collector erred in classifying the merchandise as a rug.

The collector accepted the affidavits of Jack Mason and Mrs. Sloat Fassett and presumptively investigated the facts set out therein.

He classified the merchandise as an oriental rug, and while he made no finding as to the age of the rug he did say that it was excepted from the operation of paragraph 1708. Grimm, the appraiser, and Wolf, the examiner, in answer to the protest, stated that the importation was an oriental silk rug, hand woven, of a sufficient depth of pile to be used as a floor covering and that *antique rugs over 100 years old were excepted* from the provisions of paragraph 1708. Wolf, the examiner, in open court in the presence of counsel for the Government, admitted that the rug was an artistic antiquity. Apparently the collector, the appraiser, and the examiner were satisfied that the rug was more than 100 years old and that it was dutiable solely because it was a rug or floor covering. The affidavits of the seller and the owner were admitted in evidence, and those affidavits state that to the best knowledge and belief of the affiants the rug was more than 100 years old. The affiants may have been incompetent to prove the age of the merchandise, but as the affidavits were admitted without objection they must be regarded as evidence tending to prove that the antique was produced more than 100 years prior to importation.

Notwithstanding that the name of the producer and the date of production of an artistic antiquity may be unknown, the actual age of an artistic antiquity may be proven by competent expert testimony on the trial of the issues raised by the protest. The fact that the name of the producer of antiques and the date of their production were unknown to the owner and seller, and therefore, not stated in the affidavits presented to the collector, does not necessarily mean that there has been no compliance with the regulations. To hold otherwise would result in the denial of free entry of many artistic antiquities, the age of which could be proven by competent expert witnesses. The dates of production and the names of producers of antiquities are often unknown even to the ablest of antiquaries, and to require owners and sellers to set out such dates and names is unreasonable and would preclude the admission, free of duty, of most valuable antiquities found hundreds and maybe thousands of years after their production in cities that were buried centuries ago.

In the case of *United States* v. *Tsai*, 9 Ct. Cust. Appls. 42, the importer presented a certificate of a person designating himself as agent or attorney. The certificate did not set out the name of the party from whom the alleged antiquity was acquired. The regulations prescribed that where a certificate or affidavit was made by an agent or attorney the document would not be accepted. The articles were returned by the appraiser as artistic antiquities. The collector, upon liquidation of the entry, declined to accept the certificate of the foreign shipper as complying with the regulations on the ground that it failed to specify the names of the producers, the places and

dates of production, and the names and residences of the persons from whom and the dates when the artistic antiquities were acquired by the shipper. *The importer thereupon gave bond to produce a certificate containing the information demanded. He failed to furnish the information demanded at the time fixed in the bond.* In that case it is apparent that the collector rejected the certificate and allowed the importer to give bond that he would produce, within six months, a certificate containing the information required. In this case, however, the collector accepted the certificate and raised no question as to the antiquity of the article. The importer was given no opportunity whatever to furnish the name of the person from whom the seller acquired the article.

In my opinion the judgment of the United States Customs Court should be *affirmed.*