United States *v.* B. Illfelder & Co., and Louis Wolf & Co. (No. 3230)[1]

[1] T. D. 43646.

United States Court of Customs and Patent Appeals, October 28, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Kenneth G. Osborn*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument October 8, 1929, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain small machines, invoiced at from $2.80 to $9 a dozen, described by a member of the importing firm as moving-picture machines, were imported at the port of New York. These were classified by the collector as toys, under paragraph 1414 of the Tariff Act of 1922, and were claimed by the importer to be dutiable under paragraph 228 of said act. There were other claims made in the protest, but these were neither urged here nor in the court below. The Customs Court sustained the protests under said paragraph 228, and the Government has appealed.

The competing paragraphs are as follows:

PAR. 228. Azimuth mirrors, sextants, and octants; photographic and projection lenses, opera and field glasses, telescopes, microscopes, and other optical instruments, and frames and mountings for the same; all the foregoing not specially provided for, 45 per centum ad valorem.

PAR. 1414. Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials composed, air rifles, toy balloons, toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for, 70 per centum ad valorem.

The merchandise is thus described by the court below:

The official sample, Exhibit 1, is composed of a black enameled tin lamp holder containing a kerosene lamp, a chimney for ventilating, and, attached to the front,

a telescoping arrangement containing two lenses adapted to be focused by extending or contracting the telescope. Also attached to the front of the article is a tin spool holding about 2 feet of film and mechanism by which the film may be revolved behind the lenses by turning a crank handle. Accompanying this article are three small cheap glass magic-lantern slides, depicting the antics of monkeys dressed as human beings, children at play fantastically dressed in adults' clothes, and a village scene. These slides are colored. The film depicts the antics of a clown in colors. The outside dimensions of the article are about 11½ inches by 8¼ inches by 4 inches.

In addition, it appears from the record that these machines will project an image clearly at a distance from the front lens of about 24 inches, and at that distance the image is about the size of an ordinary post card. They can be used with standard-sized film from commercial cinematographs with a film length of not to exceed 6 feet. They can be used with either stationary or moving pictures, and extra films are procurable for them. The slides ordinarily furnished with the imported machines depict scenes calculated to interest and amuse children. The imported articles are shown to be used for demonstration purposes by importers' salesmen; one witness also stated that these and similar machines had been used in his home by adults, for the pleasure and amusement of children. It is shown that commercial moving-picture machines always have two reels and project the images to a much greater distance than these imported articles; that the film in the imported articles consists of a printed celluloid piece, while those used in commercial machines are photographic negative, made with cameras.

There was also an attempt to prove commercial designation of the articles in question as toys, by one witness. This testimony, however, in our opinion, did not show a definite, uniform, and general commercial designation and hence was not sufficient. *United States* v. *Schade*, 16 Ct. Cust. Appls. 366, T. D. 43092. Some effort was also made to prove the common meaning of the term "toy." We determined the common meaning of this term in *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115. Having so determined it, that common meaning will be adhered to until a legislative change in the statutory enactment necessitates a changed determination of such meaning. *United States* v. *Felsenthal*, 16 Ct. Cust. Appls. 15, T. D. 42713, and cases therein cited.

We are satisfied, from the record and from an inspection of the sample, that the imported articles are intended and designed for the amusement of children only, and by their nature and character are reasonably fitted for no other purpose. In that respect they come within the definition of toys as announced in *Illfelder* v. *United States*, *supra*.

With this observation, we might dispose of the matter, upon the authority of *Davies, Turner & Co.* v. *United States*, 3 Ct. Cust. Appls.

110, T. D. 32363, and *United States* v. *Wanamaker*, 15 Ct. Cust. Appls. 310, T. D. 42485. In each of these cited cases, this court held that if an imported article were within the purview of the toy paragraph, then an *eo nomine* designation elsewhere would not remove it from classification as a toy.

There is, moreover, a long line of administrative practice and judicial authority to justify the classification of the articles before us as toys. As far back as November 30, 1874, the Treasury Department issued its order directing the assessment for duty of similar articles, magic lanterns, as toys. T. D. 2023. This was a continuance of the administrative practice which had continued since November 12, 1864. In T. D. 11422, small magic lanterns were held to be dutiable as toys under paragraph 436 of the Tariff Act of October 1, 1890, and not as manufactures of metal under paragraph 215 of said act. In T. D. 21784, 2 Treas. Dec. 715, the Board of General Appraisers held magic lanterns much like those involved here to be toys, under paragraph 418 of the act of July 24, 1897, as opposed to optical instruments, under paragraph 111 of the same act. Said paragraphs had much the same provisions as paragraphs 1414 and 228 of the present act. In T. D. 22096, 3 Treas. Dec. 274, magic lanterns, with and without slides, used for the amusement of children only, were held to be toys under paragraph 321 of the Tariff Act of August 27, 1894, and not as optical instruments under paragraph 98 of said act. *In re Borgfeldt*, 65 Fed. 791, Coxe, Judge, held that magic-lantern slides used for the amusement of children were toys. Small magic lanterns were held to be toys, as opposed to optical instruments, under the act of August 27, 1894, in *Borgfeldt* v. *United States*, 124 Fed. 457. This court, in *United States* v. *Borgfeldt*, 1 Ct. Cust. Appls. 370, T. D. 31455, had before it certain magic-lantern slides which were classified for duty under paragraph 107 of the Tariff Act of August 5, 1909, as "glass slides for magic lanterns," and were claimed to be dutiable as parts of toys under paragraph 431 of said act. The record disclosed that the slides were used in small, unsubstantial magic lanterns, used for the amusement of children only. They were held to be parts of toys, as claimed. A reference to the opinion filed in that case is quite illuminating here.

This uniform line of authority, administrative and judicial, was in the mind of the Congress when the Tariff Act of 1922 was enacted. It must be presumed that the Congress, in reenacting the statute, ratified and approved such construction. *United States* v. *Felsenthal*, *supra; United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133.

We are of opinion the imported goods were properly classified by the collector and the judgment of the court below is therefore *reversed.*