(C. D. 969)

Kerr-Gifford & Co. Inc. *v.* United States

United States Customs Court, Third Division

(Decided December 7, 1945)

*Lawrence & Tuttle (George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Arthur R. Martoccia,* special attorney), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Cline, Judge: This is a suit against the United States arising at the port of Seattle by protest against the collector's assessment of duty on merchandise known as refuse screenings under paragraph 731 of the Tariff Act of 1930. The merchandise is claimed to be exempt from duty under the provisions of Public Law 211 (78th Congress, 1st sess., 57 Stat. 607) or Public Law 272 (78th Congress, 2d sess., 58 Stat. 131).

Public Law 272, amending Public Law 211, provides:

Sec. 1 (a) Notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries, and when entered, or withdrawn from warehouse, for consumption, at any time after December 22, 1943, and before June 20, 1944, shall be exempt from duty:

(1) Wheat, oats, barley, rye, flax, cottonseed, corn, or hay, or products in chief value of one or more of the foregoing or derivatives thereof, any of the foregoing if to be used as, or as a constituent part of, feed for livestock and poultry.

\*          \*          \*          \*          \*          \*          \*

Sec. 2. The exemptions from duties provided for by this joint resolution shall be subject to compliance with regulations to be prescribed by the Secretary of the Treasury.

The merchandise was imported from Canada on May 22 and May 27, 1944. At the trial Albert George Touhy, manager of the import-

ing company, testified that after wheat has been cleaned by six or seven mechanical processes to remove impurities, the product remaining after the last process is refuse screenings, such as are involved herein; that the product contains a few small kernels of wheat, dust, and beeswings, which is some part of the coating of wheat bran and is also called chaff; that such merchandise is used in the making of cattle feed; and that the goods covered by the invoices herein were used for animal feed. The witness identified defendant's exhibit 1 as refuse screenings and described the material as follows:

This would be part of the stalk. The rest of this part here would be the outside of the grain. It will be grown in the stalk. This finer stuff here is around the kernel, and then this long stuff here is the stalk. Some of the other stuff in here is grown in the field.

R. Q. That is, is foreign to a wheat plant, you mean by that, when you say "grown in the field"?—A. In Canada, on the prairie, you have a good deal of foreign material growing.

Judge EKWALL. Wheat seeds, you mean?

The WITNESS. Yes.

The witness also testified:

R. X Q. Would you say that the foreign substances contained in that Exhibit 1 were by far the greater part of that exhibit?—A. What would you mean by that?

R. X Q. Well, I mean by that the dust and dirt and things that get into the grain.—A. No, because you can see for yourself the majority here around the wheat—it is the chaff from the wheat and the stalk.

In *C. J. Tower & Sons* v. *United States*, 14 Cust. Ct. 94, C. D. 919 (Suit 4514 dismissed August 9, 1945, Abstract 50485), we held that oat scalpings, consisting of cultivated oats, wheat, chaff, and wild oats, were exempt from duty under Public Law 211 and Public Law 272 when imported within the statutory period. We said:

* * * We believe the Congress intended that for a limited period all types of feed grains and their products should be admitted free of duty and that the word "derivative" was intended to include byproducts, such as scalpings, as well as actual derivatives, such as linseed cake. Since the statute is a remedial one enacted because of an emergency, it should be liberally construed. *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273, T. D. 41212. "A remedial statute ought not to be so construed as to defeat in part the very purpose of its enactment." *Beley* v. *Naphtaly*, 169 U. S. 353, 361.

The merchandise in the instant case is entitled to free entry on the same ground. Screenings and scalpings are similar materials obtained from the cleaning of grains and are used for the same purpose, namely, the feeding of cattle and poultry. It is immaterial, therefore, whether screenings are a "derivative" or a "byproduct" of wheat. Since used for the feeding of livestock, they fall within the scope of the exemption intended by Congress.

Subsequent to the importation in the *Tower* case, *supra*, but prior to the importation herein, section 58.1 (b), title 19, Code of Federal Regulations (T. D. 51033), was issued. That section provides:

(b) Screenings or scalpings are not a product or a derivative of the grain or seed from which screened, but if the screenings or scalpings are in chief value of wheat, oats, barley, rye, flax, cottonseed, corn, or hay, and/or derivatives thereof, they may be admitted free of duty under the provision in Public Law 211, as amended, for products in chief value of the named products or derivatives thereof, provided they are used as, or as a constituent part of, feed for livestock, or poultry.

Although regulations prescribed by the Secretary of the Treasury under a specific provision of statute become a condition precedent to the right accorded by the statute and must be complied with at the time of entry, such regulations must be reasonable; they may not destroy or render inoperative the right to import free of duty. *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386; *Morrill* v. *Jones*, 106 U. S. 466; *United States* v. *R. H. Comey Brooklyn Co.*, 16 Ct. Cust. Appls. 248, T. D. 42843. In *Campbell* v. *United States*, 107 U. S. 407, the court said (p. 410):

It would be a curious thing to hold that Congress, after clearly defining the right of the importer to receive drawback upon subsequent exportation of the imported article on which he had paid duty, had empowered the Secretary by regulations, which might be proper to secure the government against fraud, to defeat totally the right which Congress had granted. If the regulations of themselves worked such a result, no court would hesitate to hold them invalid as being altogether unreasonable.

Since Congress in the instant case intended to grant free entry to screenings when used as feed for livestock, any regulations of the Secretary of the Treasury disallowing such right would be unreasonable. It is clear that screenings cannot be in chief value of wheat since few wheat kernels remain after the extensive cleaning process. The product is not what is commonly known as wheat but the chaff and the stalk and foreign materials. The term "wheat" might be construed to include the entire plant but such is not the usual definition of the word. (Cf. definitions issued under the United States Grain Standards Act in the Code of Federal Regulations, title 7, sec. 26.101 to sec. 26.111.) We find, therefore, that the regulation above quoted (Code of Federal Regulations, title 19, sec. 58.1 (b), T. D. 51033) deprives the importer of a right granted by Congress and is unreasonable and invalid.

The merchandise herein is entitled to free entry under Public Law 211 as amended by Public Law 272. The protest is sustained and judgment will be rendered in favor of the plaintiff directing the collector to reliquidate and make refund accordingly.