Border Brokerage Company and Kerr-Gifford & Co., Inc. *v.* United States (No. 4585)[1]

United States Court of Customs and Patent Appeals, February 1, 1949

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Lawrence A. Harper* of counsel) for appellants.

*David N. Edelstein,* Assistant Attorney General (*Charles J. Miville,* Acting Head, Customs Division, and *Sybil Phillips,* special attorney, of counsel), for the United States.

[1] C. A. D. 402.

[Oral argument December 7, 1948, by Mr. Tuttle and Miss Phillips.]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, pursuant to its decision, C. D. 1067, overruling the protests of the importers against the liquidation by the Collector of Customs at the port of Seattle of various entries of merchandise which were invoiced as "refuse screenings" and assessed with duty at the rate of 5 per centum ad valorem under the provision for screenings or scalpings in paragraph 731 of the Tariff Act of 1930, as modified by the trade agreement with Canada, T. D. 49752, 74 Treas. Dec. 235, 248.

In each of the protests it was claimed that the merchandise was properly free of duty under Public Law 211, approved December 22, 1943 (57 Stat. 607), or Public Law 272, approved March 29, 1944 (58 Stat. 131), as one of the grains or seeds mentioned therein, or as the products or the derivatives of such grains or seeds.

Public Law 211 provides in substance for an exemption from duty of certain named grains or products, or derivates thereof, for a period of ninety days from the date of its enactment, subject, however, to compliance with regulations to be prescribed by the Secretary of the Treasury. That period of exemption was extended by Public Law 272 for an additional ninety days. Public Law 211 (57 Stat. 607), so far as pertinent, reads:

\* \* \* That notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries, and when entered, or withdrawn from warehouse, for consumption, during the period of ninety days beginning with the day following the date of enactment of this joint resolution, to be used as, or as a constituent part of, feed for livestock and poultry, shall be exempt from duty: Wheat, oats, barley, rye, flax, cottonseed, corn, or hay, or products in chief value of one or more of the foregoing or derivatives thereof: *Provided*, That this Act shall not be construed to authorize the importation of wheat for milling purposes. \* \* \*.

SEC. 2. The exemptions from duties provided for by this joint resolution shall be subject to compliance with regulations to be prescribed by the Secretary of the Treasury.

Pursuant to the provisions of section 2, *supra*, Customs Regulations 58.2 and 58.3 were issued by the Secretary of the Treasury on December 31, 1943 (title 19, Code of Federal Regulations, 79 Treas. Dec. 122, T. D. 50983). Those two regulations were substantially the same as the two regulations 58.2 and 58.3 which are hereinafter set forth.

The pertinent provisions of Public Law 272 (58 Stat. 131) are substantially the same as those provisions hereinbefore quoted from Public Law 211, with the exception that the period of the described exemption was extended to June 20, 1944. Pursuant to Public Law 272,

the following regulations, so far as pertinent, were issued on April 3, 1944 (title 19, Code of Federal Regulations, 79 Treas. Dec. 189, T. D. 51033):

**58.1 Free entry of feedstuffs.**

\* \* \* \* \* \* \*

(b) Screenings or scalpings are not a product or a derivative of the grain or seed from which screened, but if the screenings or scalpings are in chief value of wheat, oats, barley, rye, flax, cottonseed, corn, or hay, and/or derivatives thereof, they may be admitted free of duty under the provision in Public Law 211, as amended, for products in chief value of the named product or derivates thereof, provided they are used as, or as a constituent part of, feed for livestock, or poultry.

**58.2 Entry requirements.**—(a) There shall be filed in connection with the entry an affidavit of the importer that the merchandise, which shall be described by name, is to be used as, or as a constituent part of, feed for livestock or poultry.

**58.3 Proof of use.**—(a) Within 1 year from the date of entry (in the case of warehouse entries as well as consumption entries) the importer shall submit an affidavit as to the use made of the importation in the United States. \* \* \*

(b) Upon satisfactory proof of use of the product as, or as a constituent part of, feed for livestock or poultry, the entry shall be liquidated free of duty. When such proof is not filed within 1 year from the date of entry or any authorized extension of the period of the bond, the entry shall be liquidated with the assessment of duty at the appropriate rate under the proper provision of the tariff act.

In providing in section 58.1 (b), *supra*, that screenings such as are here in issue were not derivatives of the grain or seed from which screened, the Secretary of the Treasury exceeded his authority and erroneously concluded that such screenings were not entitled to free entry. To that extent, the regulation was invalid. See *Kerr-Gifford & Co., Inc.* v. *United States*, 15 Cust. Ct. 187, C. D. 969.

At the trial, counsel for the Government moved to dismiss the protests, and, alternatively, that the protests be overruled on the ground that the importers had not complied with the regulations prescribed by the Secretary of the Treasury pursuant to the authority conferred by Public Laws 211 and 272, in that the importers did not file the requisite affidavits in connection with the entry of the merchandise and the subsequent use to which it had been put. From the judgment granting that motion, this appeal has been taken.

Counsel for appellants concede, as they did at the trial of the case in the court below, that in none of the five protests here in issue, nor in any of the entries covered thereby, did the importers comply with the regulations requiring the filing of affidavits of intended and actual use of the merchandise as feedstuffs.

Appellants do not deny that normally regulations prescribed by the Secretary of the Treasury under specific provisions of a statute must be complied with. Appellants contend, however, that they were excused from filing the prescribed affidavits in the instant case because it was an idle act in that (a) the collector testified that he would have

assessed the merchandise with duty regardless of the filing of affidavits, and (b) the Secretary of the Treasury had declared that refuse screenings would not be admitted free of duty under Public Law 272, as prescribed in section 58.1 (b), supra.

The testimony of the collector as hereinbefore characterized by counsel for appellants was given by their witness Jesse G. Ogdon, Deputy Collector of Customs in Charge of the Liquidating Division at the port of Seattle, who testified, so far as pertinent, as follows:

\* \* \* Mr. Ogdon, did you have those instructions before you prior to the liquidation of this entry?—A. Yes.

Q. I will show it to you. And then I take it, regardless of whether the importer had complied, that is, furnished an affidavit of intended use and the affidavit of actual use, you would have liquidated just as you did, namely, dutiable?

\*  \*  \*  \*  \*  \*  \*

A. Our practice at the time this entry was liquidated was to assess duty on refuse screenings following the T. D.

Judge EKWALL. That isn't the question he asked you. The question he asked you was this: Would you have assessed duty just the same, regardless of whether he had complied with the regulation and filed this document he mentioned? Do you know whether you would or not?

The WITNESS. Well, according to our practice at that time we were assessing duty on refuse screenings and, therefore, I would have assessed duty on refuse screenings.

The general rule is a sound one, that when the tender of performance of an act is necessary to the establishment of any right against another party, the tender or offer to perform is waived or becomes unnecessary, when it is reasonably certain that the offer will be refused. See Hills v. Exchange Bank, 105 U. S. 319, 321.

That rule has no application in the instant case, however, because the record contains no evidence that a tender by the importers of the prescribed affidavits would have been refused, or that, if tendered, the collector would not have accepted them. The importers were neither prevented from filing the affidavits nor have they shown that the described attitude of the collector dispensed with the necessity of filing them.

The fact that a portion of the regulation, in denying exemption from duty to screenings or scalpings, was invalid does not necessarily mean that other portions of the regulation were also invalid and compliance therewith was excused. On the contrary, the remainder of the regulation, requiring the filing of affidavits in connection with the entry and subsequent use of the merchandise, was both reasonable and valid and compliance therewith was a condition precedent to the right accorded by the statute. See United States v. Morris European & American Express Co., 3 Ct. Cust. Appls. 146, T. D. 32386; United States v. William A. Bird, 16 Ct. Cust. Appls. 306, T. D. 42876; S. Schapiro & Sons v. United States, 29 C. C. P. A.

(Customs) 235, C. A. D. 196. See also *C. J. Tower & Sons* v. *United States*, 14 Cust. Ct. 94, C. D. 919; *M. A. Hoenecke* v. *United States*, 17 Cust. Ct. 4, C. D. 1010.

In the case of *Supervisors* v. *Stanley*, 105 U. S. 305, 312, the general principle was stated, that in a statute which contains both valid and invalid provisions, if the valid and invalid provisions are capable of separation, only the latter are to be disregarded. It is our opinion that the same principle is equally applicable in the instant case to regulations prescribed by the Secretary of the Treasury pursuant to the specific authority of the statute.

The decision in the *Kerr-Gifford & Co., Inc.* case, *supra*, holding section 58.1 (*b*), *supra*, invalid, was rendered subsequent to the various entries involved in this case. A number of such entries relate to importations that were made before the date of the issuance of the regulations on April 3, 1944, and other entries relate to importations which were thereafter made.

In the case last cited, the affidavits of intended and actual use were filed by the appellant therein, and free entry of the merchandise, as claimed, was allowed by the court. There is no reason to believe, in view of the record in this case, that had appellants followed the same procedure, they likewise would have been entitled to prove their case in court.

Appellants further contend that the requirement of the regulations that the affidavits shall be filed "in connection with the entry" means that such affidavits could be filed "within one year from the date of entry," and that the collector by liquidating the entry prior to the expiration of the year from the date of entry, as was done in this case, rendered the filing of the prescribed affidavits within the time allowed by the regulations an idle and useless act.

In the *Hoenecke* case, *supra*, it was stated the phrase "in connection with the entry" did not necessarily require the filing of the affidavit of intended use at the time of entry. It appears, however, that at the time the entry was made in that case, which was on the day that Public Law 211 became effective, the regulations here in issue had not been promulgated.

It is our opinion that the action of the collector in liquidating the entries prior to the expiration of one year from the date thereof, in the absence of the filing of an affidavit of intended use of the respective entries by appellants, cannot be said to have extended their time for the filing of such an affidavit. The reasonable inference to be drawn from the language of the regulation is that the phrase "in connection with the entry" means on the date of entry. See *McBride* v. *United States*, 1 Ct. Cust. Appls. 293, T. D. 31354; *Kronfeld, Saunders & Co.* v. *United States*, 4 Ct. Cust. Appls. 60, T. D. 33308.

In view of what has been hereinbefore stated, the judgment of the United States Customs Court is *affirmed*.