MAPLE LEAF PETROLEUM, LTD. *v.* UNITED STATES (No. 4021)[1]

[1] T. D. 43976.

United States Court of Customs and Patent Appeals, May 3, 1937

*James H. Hayes* for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Joseph E. Weil*, special attorney, of counsel), for the United States.

[Oral argument April 5, 1937, by Mr. Hayes and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The First Division of the United States Customs Court overruled appellant's protests and sustained the action of the Collector of Customs in assessing a tax of ½ cent per gallon on certain importations of so-called petroleum fuel oil, which assessment was made pursuant to the provisions of subsections (a) and (c) (4) of section 601 of the Revenue Act of 1932. The appellant's protests claimed that the merchandise was entitled to free entry under paragraph 1615, Tariff Act of 1930, as American goods returned. From the judgment of the trial court, appellant has appealed here.

The pertinent provision of said paragraph 1615 reads:

PAR. 1615. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means if imported by or for the account of the person who exported them from the United States; * * * but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury, * * *.

The Revenue Act of 1932 contains the following provisions:

SEC. 601. EXCISE TAXES ON CERTAIN ARTICLES.

(a) In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States unless treaty provisions of the United States otherwise provide.

\* \* \* \* \* \* \*

(c) There is hereby imposed upon the following articles sold in the United States by the manufacturer or producer, or imported into the United States, a tax at the rates hereinafter set forth, to be paid by the manufacturer, producer, or importer:

\* \* \* \* \* \* \*

(4) Crude petroleum, ½ cent per gallon; *fuel oil derived from petroleum*, gas oil derived from petroleum, and all liquid derivatives of crude petroleum,

except lubricating oil and gasoline or other motor fuel, ½ cent per gallon; gasoline or other motor fuel, 2½ cents per gallon; lubricating oil, 4 cents per gallon; paraffin and other petroleum wax products, 1 cent per pound. The tax on the articles described in this paragraph shall apply only with respect to the importation of such articles. [Italics ours.]

The Maple Leaf Petroleum, Ltd., is a Canadian corporation, operating a so-called oil-skimming plant at Coutts, Alberta, Canada, a short distance from the northern boundary of the State of Montana. It purchases petroleum from the wells of Montana either from the Kevin-Sunburst field or the Cut Bank field. The Montana Pipe Line Co. conveys this oil to the international boundary from where it is carried on to Coutts by the appellant. The crude oil so exported is there subjected to a skimming process which requires heating the crude petroleum to approximately 600° F. It is then flashed into a vaporizer whereby the lighter fractions are drawn off. Different products may be made from the lighter portions. The residue remaining in the flash chamber was drawn off and is alleged to be the residue which was returned to the United States and is here involved. The Government states that its use here upon return is not shown and in view of our conclusion this fact is not important. When the oil enters Canada, the customs officials there gauge the same. When the oil is returned to this country it is stated that it is imported through the same pipes through which it was exported.

Appellant seeks to present here the question as to whether or not the residue of the crude oil, which residue has been imported as aforesaid, under the circumstances of this case, shall be regarded as American goods returned and therefore free of duty under said paragraph 1615. Appellant predicates its contention that the imported merchandise is American goods returned upon the theory that the dominant part or fraction of the oil that went out of the country is a mixture of hydrocarbons, that everything that was taken out of the oil was a mixture of hydrocarbons and that everything that remained in the residue was a mixture of hydrocarbons; that mineral oil went out and mineral oil came back; that none of it was produced in Canada and all of it was produced in the United States.

It will not be necessary for us to pass upon the merits of appellant's said contentions for reasons which will be presently stated.

Article 392, Customs Regulations of 1931, is in part as follows:

*Art. 392. Requirements on entry.*—(a) The following documents shall be filed in connection with the entry:

1. A declaration of the foreign shipper certified by the American consular officer (consular Form 129) if the value exceeds $100. This declaration will be accepted in lieu of a consular invoice.

2. An affidavit of the owner, importer, consignee or agent on customs Form 3311.

3. A certificate (customs Form 4467) of the collector of customs at the port from which the merchandise was exported from the United States. Such certificate must show whether or not drawback was claimed or paid on the merchandise covered by the certificate and if paid, the amount thereof. * * *

It is conceded by both parties hereto that the aforesaid customs regulations were not complied with. While appellant concedes that the regulations were not complied with, it argues that since the customs regulations were merely made for the purpose of establishing identity of the goods, that since the evidence in this case clearly establishes such identity, and that since the collector knew all the facts in the case without any forms being filed, it was not necessary to comply with such regulations in the manner required by the collector. Appellant has not attacked the validity of the regulations or the reasonableness of the same except to say that a strict compliance with them was impracticable, owing to the nature of the exportations and importations involved. Appellant's testimony in substance shows that before filing the protests its representative asked the collector or the deputy collector what was necessary for appellant to do in order to make the proper entries and file the protests and that he, appellant's representative, did all he was told to do. It is the contention of the appellant that, under these circumstances, this court should "infer that the Collector waived the requirements of Article 392, Customs Regulations."

Valid customs regulations made in pursuance of law have the force and effect of law and must be complied with as an act precedent to obtaining any special grant to which such regulations relate. *MacNichol Packing Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 400, T. D. 42050; *United States* v. *Morton B. Smith Co.*, 4 Ct. Cust. Appls. 500, T. D. 33918; *United States* v. *Rettig et al.*, 2 Ct. Cust. Appls. 537, T. D. 32254.

As a general proposition a Collector of Customs cannot waive compliance with regulations prescribed by the Secretary of the Treasury made pursuant to law. *Kronfeld, Saunders & Co.* v. *United States*, 4 Ct. Cust. Appls. 60, T. D. 33308. Article 393 of the Customs Regulations of 1931 which relates to this subject matter definitely provides that the collector may under certain conditions waive record evidence of exportation and declaration of foreign shipper which is provided for in article 392. There is nothing in the instant record to indicate that the collector waived compliance with said regulations and the facts referred to by the importer do not justify the conclusion, as urged by the importer, that we should infer that the collector waived the requirements.

Appellant's argument to the effect that the collector knew all the facts, and that for this reason the establishment of the identity of the merchandise exported and imported in accordance with the regula-

tions was therefore unimportant, is devoid of merit. It has long been the sound policy of our Government that when such grants and privileges as those involved here were allowed in customs matters, they were granted only upon the condition that there should be a compliance with regulations to be prescribed by the Secretary of the Treasury. The party asking the special grant or favor, of course, would be required to make a showing of the essential facts required by the regulation to the collector at the time of entry and not in the way of evidence at some subsequent trial.

The trial court properly overruled the protests and its judgment is *affirmed*.